121 P.3d 95 (2005)
Herbert NELSON, on his behalf and on behalf of all others similarly situated, Respondent,
v.
APPLEWAY CHEVROLET, INC., a Washington corporation, d/b/a Appleway Subaru/Volkswagen/Audi, Appleway Advertising, Appleway Audi, Appleway Automotive Group, Appleway Chevrolet Leasing, Appleway Group, Appleway Mazda, Appleway Mitsubishi, Appleway Subaru, Appleway Towing, Appleway Toyota, Appleway Volkswagen, East Trent Auto Sales, Lexus of Spokane, Opportunity Center, and TSP Distributors; and Autonation, Inc., a Delaware corporation, Petitioner.
No. 23504-1-III.
Court of Appeals of Washington, Division 3, Panel Seven.
October 13, 2005.
*97 Daniel Katz, Luba Shur, Williams & Connolly, LLP, Washington, DC, Gregg Randall Smith, Attorney at Law, Spokane, WA, for Petitioner.
Max Eric Jacobs, Kim D. Stephens, Tousley Brain Stephens PLLC, Seattle, WA, Brian Scott Sheldon, Attorney at Law, Spokane, WA, for Respondent.
KURTZ, J.
¶ 1 Business and Occupation (B & O) taxes are not intended to be construed as taxes upon purchasers or customers, but, instead, "shall be levied upon, and collectible from, the person engaging in the business activities . . . and shall constitute part of the operating overhead." RCW 82.04.500. Herbert Nelson purchased a vehicle from Appleway Volkswagen. After the purchase price was negotiated, the parties signed a sales agreement listing an additional amount designated as "Business & Occupation Tax Overhead."[1] Mr. Nelson filed an action seeking a declaratory judgment that Appleway's collection of the B & O tax, and the sales tax on the B & O tax, was unlawful. Mr. Nelson also requested class certification under CR 23(b)(2) and other relief. The court certified the class and granted summary judgment, concluding that Appleway's method of itemizing and collecting the B & O tax and B & O sales tax was unlawful.
¶ 2 In this appeal, Appleway challenges Mr. Nelson's right to bring this claim under Washington's uniform declaratory judgments act (UDJA). Appleway further contends RCW 82.04.500 authorizes the pass through of the B & O tax to customers. Appleway finally contends the court erred by certifying the class because Mr. Nelson lacked standing and has no cognizable claim. We conclude Mr. Nelson had a right to bring this claim under the UDJA. We hold Appleway's manner of assessing and collecting the B & O tax from customers violated RCW 82.04.500. We further hold Mr. Nelson has standing and his request for monetary relief did not bar certification under CR 23(b)(2). Accordingly, we affirm the judgment of the trial court.

FACTS
¶ 3 In September 2002, Herbert Nelson purchased a used Volkswagen Cabriolet from Appleway Volkswagen in Spokane, Washington. Appleway Volkswagen is a car dealership *98 within the Appleway Chevrolet, Inc., group of dealerships.
¶ 4 The parties agreed on the price of $16,822 for the vehicle and entered into an Agreement to Purchase (the "Agreement"). In addition to the sales price, the Agreement listed several fees and taxes, including Washington State sales tax of $1,255.60 and a charge of $79.23 for Washington State B & O tax. The amount of sales tax included sales tax charged on the B & O tax.
¶ 5 Washington B & O Tax. Washington imposes a B & O tax for the privilege of engaging in business. RCW 82.04.220. This tax is measured by the application of rates against the value of products, gross proceeds of sales, or gross income of a business. RCW 82.04.220. At issue in this case is the operation of RCW 82.04.500, which provides:
It is not the intention of this chapter that the taxes herein levied upon persons engaging in business be construed as taxes upon the purchasers or customers, but that such taxes shall be levied upon, and collectible from, the person engaging in the business activities herein designated and that such taxes shall constitute a part of the operating overhead of such persons.
¶ 6 Disclosure of B & O Tax. Appleway points out that the B & O tax was disclosed to Mr. Nelson at four places on the contracts. First, the Agreement stated that Mr. Nelson would be charged $79.23 "Business & Occupation Tax Overhead." Clerk's Papers (CP) at 50. Second, in small print on the back of the page listing the charges, paragraph 12  of 13 paragraphs  read as follows:
12. Business and Occupation taxes (B & O tax) have been assessed on the negotiated sales amount. B & O taxes are a tax on businesses for the right to operate in the State of Washington, are an overhead expense of the dealership, and are assessed as a percentage of total sales. As such, the amount of B & O tax assessed on your transaction depends on the negotiated price of the vehicle, service, parts, or other items being purchased by you. Sales tax is assessed on both the negotiated selling price and the B & O tax amount. All advertised vehicles, services, parts, etc. are advertised at a specific price plus B & O tax, sales tax, luxury tax, license fees, or other governmentally mandated charges.
CP at 51.
¶ 7 Catherine Nelson initialed a line on the Acknowledgement of Terms and Conditions of Vehicle Transaction form indicating that: "I understand that the dealership is passing through the B & O tax overhead and that I am paying sales tax on the sales price and B & O tax amounts." CP at 53. Mr. and Mrs. Nelson signed the Retail Installment Contract and Security Agreement that also disclosed the B & O charge.[2]
¶ 8 Complaint. Mr. Nelson filed a complaint requesting a declaratory judgment that Appleway's collection of B & O tax, and the sales tax on the B & O tax violates RCW 82.04.500. Mr. Nelson also asked the court to enjoin Appleway from assessing or collecting these taxes from customers in Washington. Finally, the complaint also seeks further relief under RCW 7.24.080, alleging that Mr. Nelson should receive restitution because Appleway has been unjustly enriched. The complaint alleged Mr. Nelson's claims are suitable for class treatment under CR 23(a) and CR 23(b)(2).
¶ 9 Significantly, the complaint does not allege claims based on theories of tort or contract, or based on a violation of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW.
¶ 10 Decision on Summary Judgment Motions. Both parties filed motions for summary judgment as to the issue of whether Appleway's conduct was lawful. The superior court concluded that Appleway's practice of itemizing and collecting the B & O tax from customers, and Appleway's practice of collecting sales tax on the B & O tax, violated the applicable statutes. Finding Appleway's conduct had the potential to further injure Mr. Nelson, the court enjoined Appleway from collecting, "`passing through,'" or *99 "`itemizing,'" the B & O tax and the B & O sales tax. CP at 388.
¶ 11 Class Certification. Along with his motion for summary judgment, Mr. Nelson moved for class certification. The court granted the motion, certifying the class as:
All individuals and entities from whom Defendants itemized and collected B & O Tax on the sale of motor vehicles, parts, merchandise, or service in the state of Washington.[[3]]
CP at 380.
¶ 12 Reconsideration. The court denied Appleway's motion for reconsideration but stayed its grant of declaratory and injunctive relief for 30 days to allow Appleway to seek relief in the appellate court.
¶ 13 Discretionary Review. Appleway filed a notice for discretionary review and a motion for a stay. This court granted both motions.

ANALYSIS
¶ 14 Standard of Review. The facts are undisputed and our review of the trial court's decision on summary judgment is de novo. See Castro v. Stanwood Sch. Dist. No. 401, 151 Wash.2d 221, 224, 86 P.3d 1166 (2004). Questions of statutory construction are also reviewed de novo. State v. J.M., 144 Wash.2d 472, 480, 28 P.3d 720 (2001). A trial court's class certification decision is reviewed for an abuse of discretion. Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wash.2d 40, 47, 905 P.2d 338 (1995) (quoting Eriks v. Denver, 118 Wash.2d 451, 466, 824 P.2d 1207 (1992)).
¶ 15 Declaratory Judgment. Under Washington's UDJA, a person whose rights, status, or other legal relations are affected by a statute may have any question concerning the construction of that statute determined by the court. Branson v. Port of Seattle, 152 Wash.2d 862, 877, 101 P.3d 67 (2004). Specifically, RCW 7.24.020 reads, in part, as follows:
A person . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.
The UDJA is to be liberally construed and is designed to clarify uncertainty with respect to rights, status, and other legal relations. DiNino v. State, 102 Wash.2d 327, 330, 684 P.2d 1297 (1984).
¶ 16 Enforceable Right/Private Cause of Action. One of the most contentious issues between the parties is whether Mr. Nelson is required to establish a private cause of action in order to obtain relief under the UDJA. This issue was raised at the summary judgment proceeding and the court concluded that Mr. Nelson need not show a private cause of action because he was not seeking tort damages. Appleway maintains the trial court erred because Mr. Nelson must establish an independent private cause of action in order to pursue this matter as a declaratory judgment.
¶ 17 The confusion on this question is understandable because the term "private cause of action" is frequently used in the context of tort litigation. While most tort theories arise from the common law, the legislature also has the power to define and change tort law. Geschwind v. Flanagan, 121 Wash.2d 833, 841, 854 P.2d 1061 (1993). As a result, a duty may be imposed based on a statute or common law principles of negligence. Bernethy v. Walt Failor's, Inc., 97 Wash.2d 929, 932, 653 P.2d 280 (1982).
¶ 18 In contrast, an action seeking declaratory relief may involve the construction of a statute, and injunctive relief may be more appropriate than damages. See Wash. Fed'n of State Employees v. State Pers. Bd., 23 Wash.App. 142, 148, 594 P.2d 1375 (1979). For this reason, some declaratory judgment cases discuss whether there is a judicially *100 enforceable duty and may or may not use the term "private cause of action." See, e.g. Wash. Fed'n, 23 Wash.App. at 148, 594 P.2d 1375 ("legal right capable of judicial protection"); Camer v. Seattle Sch. Dist. No. 1, 52 Wash.App. 531, 536, 762 P.2d 356 (1988) ("private cause of action"; "private right of action"; "judicially enforceable duty").
¶ 19 In any event, this court has no jurisdiction under the UDJA unless Mr. Nelson can show that he is asserting a statutory legal right capable of judicial protection. Wash. Fed'n, 23 Wash.App. at 148, 594 P.2d 1375. A cause of action will be implied if: (1) the plaintiff is in the class for whose benefit the statute was enacted; (2) the legislative intent expressly or implicitly supports creating or denying a remedy; and (3) implying a remedy is consistent with the purpose of the legislation. McCandlish Elec., Inc. v. Will Constr. Co., 107 Wash.App. 85, 96-97, 25 P.3d 1057 (2001). Where a statute provides a new right, but no remedy, a remedy will be provided. Id. at 97, 25 P.3d 1057.
¶ 20 RCW 82.04.500 states that the B & O tax was created to tax businesses, not purchasers or customers  but that businesses may include this tax in their business overhead. The UDJA is available to resolve the tension inherent in RCW 82.04.500. Consequently, purchasers or customers, like Mr. Nelson, may proceed under the UDJA to determine whether Appleway's method of itemizing and collecting the B & O tax was unlawful under RCW 82.04.500.
¶ 21 Relying on Blockbuster, Inc. v. White, 819 So.2d 43 (Ala.2001), Appleway contends that customers have no judicially enforceable right under RCW 82.04.500.
¶ 22 In Blockbuster, a customer sought damages based on allegations that the video store fraudulently passed on a rental tax to customers. Id. at 44. The language of the statute provided that the rental tax would be imposed on each person engaging in the business of leasing or renting tangible personal property. Id. Significantly, the provision did not contain language similar to that found in RCW 82.04.500 stating that the tax was not intended as a tax on customers. The court concluded that the customer had no private cause of action under the applicable statute. Blockbuster, 819 So.2d at 44.
¶ 23 Appleway cites several Washington cases to support its position that an action under the UDJA requires an independent, private cause of action. But these cases are also distinguishable. In Washington Federation the court concluded that a plaintiff seeking relief under the UDJA must assert "a legal right capable of judicial protection which exists in a statute, constitution or common law." Wash. Fed'n, 23 Wash.App. at 148, 594 P.2d 1375. As a result, the court refused to allow review of a nonjudicial administrative decision under the UDJA because the agency was not engaging in statutory interpretation when making the decision. Id. at 146-48, 594 P.2d 1375. In Camer, the court noted that declaratory relief was available to parties requesting construction of a statute, but the court concluded that the underlying administrative decisions did not involve the interpretation of a statute. Camer, 52 Wash.App. at 537, 762 P.2d 356.
¶ 24 Appleway also contends that this court has no jurisdiction because remedies are available under other statutes. Along similar lines, Appleway maintains that there is no need to imply a private cause of action under RCW 82.04.500 because the legislature made the decision to provide other statutory remedies for customers.
¶ 25 Appleway's underlying assertion is true. Courts are unwilling to find an implied private cause of action where the legislature has established a specific administrative or judicial appellate procedure. See, e.g. Williams v. Nat'l Sch. of Health Tech., Inc., 836 F.Supp. 273, 281 (E.D.Pa.1993), aff'd, 37 F.3d 1491 (3rd Cir.1994). This restriction prevents the UDJA[4] from circumventing legislatively created enforcement provisions. Id.
*101 ¶ 26 But the Washington statutes Appleway suggests here are not helpful, or even applicable, remedies for Mr. Nelson. For example, Appleway contends that Washington customers have remedies for unfair and deceptive conduct under the CPA, RCW 19.86.090. Appleway also contends there is an extensive statutory scheme relating to tax administration and recovery granting taxpayers private remedies against the Department of Revenue relating to claims of overpaid taxes. But the CPA provides relief for certain types of unfair trade practices. Likewise, the tax provisions cited by Appleway, RCW 82.32.060, .150,.160, and .170, are available to taxpayers, not customers and purchasers, such as Mr. Nelson.
¶ 27 In summary, a person whose rights, status, or other legal relations are affected by a statute may have a question of construction determined by the court. Branson, 152 Wash.2d at 877, 101 P.3d 67. Here, Mr. Nelson has demonstrated a judicially enforceable right under RCW 82.04.500 sufficient to establish jurisdiction under the UDJA.
¶ 28 Justiciability and Standing. To proceed under the UDJA, a person must present a justiciable controversy and establish standing. A justiciable controversy is:
(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement,
(2) between parties having genuine and opposing interests,
(3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and
(4) a judicial determination of which will be final and conclusive.
Diversified Indus. Dev. Corp. v. Ripley, 82 Wash.2d 811, 815, 514 P.2d 137 (1973).
¶ 29 The traditional doctrine of standing limits the justiciability determination and prohibits a litigant from raising another person's legal right. Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wash.2d 791, 802, 83 P.3d 419 (2004) (Grant County II). A two-part test has been developed for determining if a party has standing to bring an action. Id. When applying this test, the court first inquires whether the interest asserted is arguably within the zone of interests protected by the statute or constitutional right at issue. Id. (quoting Save A Valuable Env't v. City of Bothell, 89 Wash.2d 862, 866, 576 P.2d 401 (1978)). Second, the court asks whether the party seeking standing has suffered an injury in fact, economic or otherwise. Id.
¶ 30 Appleway contends Mr. Nelson lacks standing to pursue a declaratory judgment action because the interest he asserts is beyond the scope of the statute. But RCW 82.04.500 states that the B & O tax "shall be levied upon, and collectible from, the person engaging in the business activities" and that the B & O tax is not intended to be "construed as taxes upon the purchasers or customers." As a purchaser, Mr. Nelson is certainly within the zone of interest contemplated by the statute.
¶ 31 Appleway also maintains that Mr. Nelson's interest must be beyond the scope of the statute because he cannot establish a private cause of action under RCW 82.04.500. This argument repeats the assertions made in connection with the issue of jurisdiction. For example, Appleway relies on Van Eck v. Gavin, 44 Conn.Supp. 407, 690 A.2d 460 (1996). In Van Eck, the purchaser of petroleum products was not allowed to bring an action to challenge the assessment of a sales tax on the gross earnings of petroleum products because the purchaser did not qualify as a "taxpayer" authorized to appeal under the applicable statute. Id. at 462.
¶ 32 Appleway also relies on Branson regarding the issues of standing and justiciability. In Branson, declaratory relief was denied because Mr. Branson and the class he represented lacked standing and because they failed to show a controversy arising between parties having genuine and opposing interests on the issue. Branson, 152 Wash.2d at 876-77, 101 P.3d 67.
¶ 33 Mr. Branson challenged the "reasonable and uniform" provision of RCW 14.08.120(6), which is part of the statutory scheme that allows a municipality to raise *102 money for its airports. The provision in question reads, in part, as follows:
PROVIDED, That in all cases the public is not deprived of its rightful, equal, and uniform use of the property. Charges shall be reasonable and uniform for the same class of service and established with due regard to the property and improvements used and the expense of operation to the municipality.
RCW 14.08.120(6) (emphasis added).
¶ 34 Mr. Branson rented cars from Sea Tac airport and, on each occasion, his bill included a separate line item to cover the concession fee the rental car companies paid to Sea Tac. These rental car companies paid a fixed rent for counter space, plus a concession fee of 10 percent of their gross income. Branson, 152 Wash.2d at 867, 101 P.3d 67. Mr. Branson claimed the airport concession fees charged to rental car companies based on gross receipts denied the public uniform use of the property, were not uniform for the same class of people, and were not established with regard for the amount of property used and the expense of airport operation. Id. at 866, 101 P.3d 67.
¶ 35 The court determined that Mr. Branson lacked standing because he was not within the zone of interests intended to be protected by the "reasonable and uniform" provision. Id. at 876, 101 P.3d 67. The court acknowledged that the statute indicated that it was designed to protect the public by ensuring "equal and uniform public use," but determined that the "reasonable and uniform" provision pertaining specifically to charges indicated an intent to protect only those entities charged with fees by the Port. Id. In other words, the protection offered by the language limiting charges did not extend to Mr. Branson because he was not charged the fee, but, instead, paid a recoupment fee to the rental car company. Id. Hence, the court determined that Mr. Branson did not fall within the zone of interests protected by the "reasonable and uniform" language. Id.
¶ 36 Branson also examined the justiciability requirements of the UDJA. The court concluded that the controversy arising out of the challenged statutory language was not between parties having genuine and opposing interests on the issue. Because the fees were not charged directly by the Port to Mr. Branson, the two parties were not sufficiently opposed to satisfy the justiciability requirement of the UDJA. Id. at 878, 101 P.3d 67.
¶ 37 In short, while Appleway relies heavily on Branson, this case is distinguishable as the language of the statute under consideration was vastly different than RCW 82.04.500.
¶ 38 Appleway next maintains Mr. Nelson cannot bring a claim under the UDJA because he cannot establish injury in fact.
¶ 39 To establish harm under the UDJA, the claimant must demonstrate a justiciable controversy based on allegations of personal harm that are substantial rather than speculative or abstract. Grant County II, 150 Wash.2d at 802, 83 P.3d 419. Appleway maintains that Mr. Nelson was not harmed because he would have had to pay the operating overhead charge even if it had not been disclosed. We disagree. Mr. Nelson meets this test because he purchased a vehicle from Appleway and was charged with a "Business & Occupation Tax Overhead" charge after negotiating the purchase price. CP at 50. Also, CR 57 provides: "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." And, RCW 7.24.080 allows further relief based on a declaratory judgment or decree whenever necessary or proper.
¶ 40 In short, we conclude Mr. Nelson could bring this claim under the UDJA.
¶ 41 RCW 82.04.500. The trial court concluded that Appleway's "itemizing and collecting B & O Tax and B & O Sales Tax from buyers violates the laws of the State of Washington," and enjoined Appleway from collecting, "`passing through'" or "`itemizing'" B & O tax and B & O sales tax. CP at 388. Appleway contends the court erred because RCW 82.04.500 expressly permits the pass-through of the B & O tax, and, in any event, does not prohibit the itemization of the tax pass-through to customers.
*103 ¶ 42 This court reviews questions of statutory construction de novo. State v. J.M., 144 Wash.2d 472, 480, 28 P.3d 720 (2001). When a statute is plain and unambiguous, its meaning must be derived from the wording of the statute itself. State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001). A statute is ambiguous if "susceptible to two or more reasonable interpretations," but "a statute is not ambiguous merely because different interpretations are conceivable." State v. Hahn, 83 Wash.App. 825, 831, 924 P.2d 392 (1996). This court must discern and carry out the intent of the legislature, but must also avoid a literal interpretation leading to an absurd result. State v. Watson, 146 Wash.2d 947, 955, 51 P.3d 66 (2002).
¶ 43 Plain Language. RCW 82.04.500 is unambiguous. First, RCW 82.04.220 provides that the B & O tax
shall be collected . . . for the act or privilege of engaging in business activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be.
¶ 44 Second, RCW 82.04.500 specifically provides that the B & O tax is not to be "construed as taxes upon the purchasers or customers." Third, RCW 82.04.500 also provides that the B & O tax "shall be levied upon, and collectible from, the person engaging in the business activities herein designated and that such taxes shall constitute a part of the operating overhead of such persons."
¶ 45 Appleway points out that the statute unambiguously provides that the B & O tax may be passed on to the customer as part of operating overhead. While this is true, we must also read the statute to give meaning to the language stating that the B & O tax should not be construed as a tax on purchasers and customers.
¶ 46 Citing Canteen Service, Inc. v. State, 83 Wash.2d 761, 762, 522 P.2d 847 (1974), Appleway reminds the court that "[t]he legal incidence of a tax does not always fall upon the same person or entity as the economic burden." Canteen Service, who sold cigarettes from vending machines, challenged that part of the sales tax and B & O tax assessed against the part of the sales price resulting from the cigarette stamp tax. Id. Unlike the provision we are considering, Canteen considered a statute which defined the selling price for purposes of the retail sales tax to include taxes or other expenses. Id. at 762-63, 522 P.2d 847.
¶ 47 In other words, the economic burden of a tax is usually passed on the customers, but that does not mean that legislatures cannot design statutes to set forth the manner in which the pass-through must take place. Here, RCW 82.04.500 provides that the B & O tax can be added to operating overhead but cannot be passed on to the customer as a tax.
¶ 48 Underlying Character of the Tax. Appleway next argues that itemization of the B & O tax is legal because the statute does not prohibit a seller from disclosing the pass-through as a line item on the sales agreement. In Appleway's view, this court cannot construe the statute as prohibiting itemization when the statute is silent and takes no position as to this practice. However, while RCW 82.04.500 does not expressly address itemization, the statute does state that the tax cannot be passed on to the customer, and that the seller must consider the tax as an operating expense.
¶ 49 Appleway cites several out-of-jurisdiction cases to support the position that the itemization of a tax does not change its underlying character. These cases are distinguishable.
¶ 50 In Texaco Refining & Marketing Company v. Commissioner of Revenue Services, 202 Conn. 583, 584-85, 522 A.2d 771 (1987), the court addressed the question as to whether the funds collected from customers for the Connecticut gross earnings tax were includable in the gross earnings derived from the sales of petroleum products and subject to a tax on that amount. While the language in the statute was similar to the language in RCW 82.04.500, the Connecticut statute dealt with the sale of petroleum fuel products, which apparently also contained some mechanism for price control. Texaco Ref., 202 Conn. at 595, 522 A.2d 771. Of greater importance, the issue raised in Texaco Refining *104 was not brought by customers, but by a seller of petroleum products who, by itemizing the B & O tax on petroleum products, was attempting to avoid the overall B & O tax on gross earnings for the petroleum tax portion of his earnings. Id. at 585-86, 522 A.2d 771.[5]
¶ 51 Likewise, in Pure Oil Company v. State, 244 Ala. 258, 261, 12 So.2d 861 (1943), the court determined the definition of gross sales for purposes of a tax on fuel oils where Pure Oil sought deductions for other items of taxation levied against it. Similarly, in United Nuclear Corporation v. Revenue Division, 98 N.M. 296, 300, 648 P.2d 335 (1982), the court determined that a seller/taxpayer could not deduct amounts it charged buyers for reimbursement of a severance tax where the applicable statute specifically provided it was "without deduction of any kind."
¶ 52 In other words, the cases relied upon by Appleway involve situations where a seller is attempting to deduct amounts charged to a buyer from a tax liability. These cases concluded that a seller who itemizes an amount on an invoice to the buyer does not change the seller's underlying responsibility for the tax. These cases are not helpful here because the statutory language is different and the customer charged with the itemized tax is bringing the action.
¶ 53 Appleway also contends that Branson demonstrates that a governmental fee imposed on a seller will not be transformed into a governmental charge levied on a customer even if the charge is passed through to the customer by itemization on an invoice. However, as pointed out earlier, Branson determined that the "reasonable and uniform" provision did not apply to payments made by the customer. Branson, 152 Wash.2d at 876, 101 P.3d 67.
¶ 54 Appleway also maintains that the provisions of RCW 82.04.500 were designed to protect the State's tax base, and do not limit the manner in which the seller discloses the B & O tax to customers. But this is another jurisdiction or standing argument in that Appleway is arguing, again, that Mr. Nelson has no enforceable rights under RCW 82.04.500. Mr. Nelson has an enforceable right because the plain language of the statute states that Appleway must treat the B & O tax as operating overhead and that the B & O tax cannot be treated as a tax on purchasers or customers.
¶ 55 Disclosure. Appleway argues that it would be unreasonable to construe RCW 82.04.500 to penalize disclosure of pricing information to customers. Moreover, Appleway points out that Mr. Nelson concedes that the B & O tax information could have been disclosed as part of the negotiation process.
¶ 56 But a plain reading of the statute allows for both payment of the tax by the seller and disclosure. Quite simply, the seller can disclose the B & O overhead charge to the purchaser, but it must be done while setting the final purchase price. The process here involved the negotiation of a price; hence, the information should have been disclosed as part of that process.
¶ 57 Relying on Bloom v. O'Brien, 841 F.Supp. 277 (D.Minn.1993), Appleway suggests that any prohibition on disclosure raises First Amendment issues. Bloom considered a Minnesota statute imposing a gross revenue tax on health care providers and allowing health care providers to pass the tax on to customers. However, the statute also prohibited health care providers from itemizing the cost of the gross revenue tax on invoices. Id. at 278. The court granted a preliminary injunction concluding that this restriction placed a chilling effect on the health care providers' free speech. Id. at 281-82. Unlike RCW 82.04.500, the Minnesota statute had no language indicating that the tax could not be passed on to customers.
¶ 58 Deference to Special Notice. Appleway also maintains that the superior court erred by failing to defer to the Department of Revenue special notice. The superior court refused to defer to this publication, concluding that the special notice was not a *105 legal opinion and did not directly rule that the itemization of the B & O tax to the customer was legal.
¶ 59 We agree with the court's decision to reject the special notice. Courts have the ultimate authority to interpret a statute and do not defer to an agency's rule where no ambiguity exists in the statute. Edelman v. State ex. rel. Pub. Disclosure Comm'n, 152 Wash.2d 584, 590, 99 P.3d 386 (2004).
¶ 60 CR 23(b)(2). A trial court's class certification decision is reviewed for an abuse of discretion. Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wash.2d 40, 47, 905 P.2d 338 (1995) (quoting Eriks v. Denver, 118 Wash.2d 451, 466, 824 P.2d 1207 (1992)).
¶ 61 The trial court certified the following class:
All individuals and entities from whom Defendants itemized and collected B & O Tax on the sale of motor vehicles, parts, merchandise, or service in the state of Washington. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, any entity which has a controlling interest in Defendants, and Defendants' legal representatives, assigns, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.
CP at 380-81.
¶ 62 Appleway apparently concedes that Mr. Nelson has satisfied the prerequisites for class certification set forth in CR 23(a): numerosity, commonality, typicality, and adequacy. Appleway also appears to concede that Mr. Nelson has met the first requirement in CR 23(b)(2), requiring that the defendants have acted or refused to act on grounds generally applicable to the class. Instead, Appleway argues that the class certification was inappropriate because Mr. Nelson lack standing to represent the class and because Mr. Nelson's claim for monetary relief clearly predominates over his request for declaratory relief.
¶ 63 Does Mr. Nelson have standing to represent the class? The trial court concluded that Mr. Nelson's claims were "typical of those of the Class as a whole," and that Mr. Nelson would "fairly and adequately protect the interests of the class as a whole." CP at 377-78.
¶ 64 Appleway contends that Mr. Nelson lacked standing to represent the class because he cannot state a claim against Appleway on his own behalf. To support this claim Appleway relies on Corrigan v. Tompkins, 67 Wash.App. 475, 836 P.2d 260 (1992), and Doe v. Spokane & Inland Empire Blood Bank, 55 Wash.App. 106, 780 P.2d 853 (1989).
¶ 65 In Corrigan, the plaintiff failed to state a claim because he filed a suit against the commission for not following appeal procedures when he had an adequate remedy at law in the form of an appeal or petition for review. Corrigan, 67 Wash.App. at 477-78, 836 P.2d 260. Here, Mr. Nelson properly sought a declaratory judgment to define and enforce a statutory right.
¶ 66 In Doe, the named plaintiff admitted in depositions that he never had contact with the defendants and there was no evidence in the record supporting a basis for the plaintiff having named the defendants. Doe, 55 Wash.App. at 108, 114, 780 P.2d 853. Accordingly, the plaintiff in Doe was not allowed to litigate a claim against the defendants on behalf of a class when he had no claim against the defendants himself. Id. at 115, 780 P.2d 853. Here, Mr. Nelson has a claim for the purchase of his vehicle from Appleway Volkswagen.
¶ 67 Does the claim for monetary relief predominate? CR 23(b)(2) authorizes class certification where, among other things, the primary claim is for injunctive or declaratory relief and the request for monetary damages is merely incidental.
¶ 68 Appleway maintains that Mr. Nelson and the members of the class would not benefit from any declaratory or injunctive relief because each class member has already allegedly paid the B & O tax overhead. Moreover, Mr. Nelson seeks a substantial amount that was allegedly collected from thousands of class members. In view of these allegations, Appleway asserts that the claim for monetary relief clearly predominates.
*106 ¶ 69 Appleway relies on Fry v. Hayt, Hayt & Landau, 198 F.R.D. 461 (E.D.Pa.2000) to support this assertion. But Fry is not helpful. Mr. Fry filed action against a law firm seeking damages stemming from a collection letter sent out by the firm that Mr. Fry alleged violated various state and federal statutes. The parties reached a settlement agreement and sought conditional class certification. The court granted conditional certification under CR 23(b)(3) and, in a footnote, determined that certification under CR 23(b)(2) was inappropriate because the plaintiffs had not sought an injunction in their original complaint and were seeking a substantial monetary amount of $453,500. Fry, 198 F.R.D. at 469 n. 8.
¶ 70 Relying on Robinson v. Texas Automobile Dealers Association, 387 F.3d 416 (5th Cir.2004), Appleway next contends that individual trials would be necessary to determine the amount owed to each customer.
¶ 71 In Robinson, customers filed an action against automobile dealers and their association alleging that the practice of charging the vehicle inventory tax as a separate item resulted in horizontal price-fixing and a conspiracy to create a horizontal price-fixing regime. Id. at 420. The court reversed class certification because the court would have to determine whether a purchaser negotiated a top-line or a bottom-line strategy; hence, the court would have to hear evidence regarding the transaction of each class member. Id. at 423-24.
¶ 72 Robinson is distinguishable on several grounds. First, the court in Robinson reviewed a CR 23(b)(3) certification, not a CR 23(b)(2) certification. Second, the issue in Robinson was whether the facts necessary to establish a horizontal price-fixing action predominated the proposed class. Id. at 422. Predominance is an issue in CR 23(b)(3) certification, not CR 23(b)(2) certification. As a result, the manner in which the class members negotiated the purchase price of their vehicle was crucial to the plaintiffs' ability to establish that they purchased the vehicle at a higher rate than the competitive rate. Id. at 422-24.
¶ 73 In contrast, here the issue is whether Appleway's itemization and collection of the B & O tax was unlawful. Presumably, damages can be obtained with reference to the individual sales agreements. There need not be any inquiry into Appleway's negotiations with each individual member of the class. The court did not abuse its discretion in certifying the class under CR 23(a) and CR 23(b)(2).
¶ 74 We affirm the judgment of the trial court.
WE CONCUR: KATO, C.J., and SCHULTHEIS, J.
NOTES
[1] Clerk's Papers (CP) at 50.
[2] The B & O tax was also disclosed in Appleway's advertising and signage, which refer to "B & O Overhead." CP at 21-22.
[3] The following are excluded from the class: defendants, any entity in which defendants have a controlling interest; any entity which has a controlling interest in defendants; defendants' legal representatives, assigns, and successors; the judge to whom the case is assigned and any member of the judge's immediate family.
[4] The federal statute concerning declaratory judgments is found at 28 U.S.C.A. § 2201 and, with exceptions in some subject areas, allow the federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."
[5] The court gives this example: "Assume that the plaintiff sold petroleum products to a customer for a sales price of $1,000  and a 2 percent tax of $20. According to the plaintiff, its taxable gross earnings on this transaction are $1,000. According to the defendant, the plaintiff's taxable gross earnings are $1,020." Texaco Ref., 202 Conn. at 585 n. 6, 522 A.2d 771.