157 P.3d 847 (2007)
Herbert NELSON, on his behalf and on behalf of all others similarly situated, Respondent,
v.
APPLEWAY CHEVROLET, INC., a Washington corporation, d/b/a Appleway Subaru/ Volkswagen/Audi, Appleway Advertising, Appleway Audi, Appleway Automotive Group, Appleway Chevrolet Leasing, Appleway Group, Appleway Mazda, Appleway Mitsubishi, Appleway Subaru, Appleway Towing, Appleway Toyota, Appleway Volkswagen, East Trent Auto Sales, Lexus of Spokane, Opportunity Center, and TSP Distributors; and Autonation, Inc., a Delaware corporation, Petitioners.
No. 77985-6.
Supreme Court of Washington, En Banc.
Argued October 19, 2006.
Decided April 26, 2007.
*849 Stephen Michael Rummage, Davis Wright Tremaine, Seattle, Daniel Katz, Luba Shur, Williams & Connolly, LLP, Washington, DC, for Petitioners.
Brian Scott Sheldon, Spokane, Kim D. Stephens, Max Eric Jacobs, Kimberlee L. Gunning, Tousley Brain Stephens PLLC, Seattle, for Respondent.
Michael Barr King, Talmadge Law Group PLLC, Tuckwila, Linda Blohm Clapham, Carney Badley Spellman, Seattle, for Amicus Curiae Association of Washington Business.
Jill Diane Bowman, Stoel Rives LLP, Seattle, Jeremy D. Sacks, Portland, OR, for Amicus Curiae Camp Automotive and Lithia Motors Inc.
Kimberley Hanks McGair, Portland, OR, for Amicus Curiae Charter Communication LLC.
SANDERS, J.
¶ 1 Herbert Nelson purchased a used car from Appleway Volkswagen (Appleway). But after negotiating a final purchase price, Appleway added $79.23 for business and occupation (B & O) tax. Nelson argues Appleway improperly charged this tax as an additional cost above the final price, while Appleway argues it merely disclosed and itemized an overhead expense. Appleway also argues declaratory judgment is improper because Nelson has no standing, there is no justiciable controversy, and there was no private right of action. Appleway also complains the superior court improperly certified the class because Nelson seeks both declaratory and monetary relief. The trial court held for Nelson, the Court of Appeals affirmed, as do we.
¶ 2 We hold Appleway improperly charged Nelson B & O tax on top of the final price, Nelson can seek declaratory judgment, and the superior court properly certified the class.

I
¶ 3 The facts are undisputed. On September 3, 2004, Herbert Nelson purchased a used Volkswagen Cabriolet from Appleway Volkswagen in Spokane.[1] Appleway charged several fees and taxes in addition to the agreed sale price of $16,822. This included a $79.23 charge for B & O tax.[2]
¶ 4 Soon after purchase, Nelson filed a class action claim requesting declaratory relief that Appleway's collection of B & O tax, and the sales tax on the B & O tax, violated Washington law.[3] He also asked the court to enjoin Appleway's future collection of B & O tax from customers and prayed for monetary relief, claiming Appleway was unjustly enriched. Each party moved for summary judgment. The superior court found for Nelson, concluding Appleway's collection of B & O tax from customers violated RCW 82.04.500. It enjoined Appleway from passing through the tax to its customers and certified the class.[4] The Court of Appeals *850 affirmed. Nelson v. Appleway Chevrolet, Inc., 129 Wash.App. 927, 945, 121 P.3d 95 (2005). We granted review. 157 Wash.2d 1012, 139 P.3d 350 (2006).

II
¶ 5 First, we address whether Appleway could directly impose its B & O tax obligation on its customers. Statutory construction is a question of law and is reviewed de novo. Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 807, 16 P.3d 583 (2001). Washington State generates substantial revenue through its B & O tax. This B & O tax is for the privilege of engaging in business and is levied against the value of products, gross proceeds of sales, or gross income of a business. RCW 82.04.220. This tax is levied directly on businesses:
It is not the intention of this chapter that the taxes herein levied upon persons engaging in business be construed as taxes upon the purchasers or customers, but that such taxes be levied upon, and collectible from, the person engaging in the business activities herein designated and that such taxes shall constitute a part of the operating overhead of such persons.
RCW 82.04.500. We apply unambiguous statutes according to their plain language. State v. Wilson, 125 Wash.2d 212, 217, 883 P.2d 320 (1994). Only ambiguous statutes will be construed. Id.
A. The plain meaning of RCW 82.04.500 prevents Appleway from directly imposing B & O tax on its customers
¶ 6 RCW 82.04.500 is not ambiguous and plainly says two things. First, the tax is not a tax on customers. Second, the tax is a tax on business and should be part of the operating overhead. "Overhead" is a well-known and well-understood term. Webster's Third New International Dictionary 1608 (2002) defines it as: "those general charges or expenses in a business which cannot be charged up as belonging exclusively to any particular part of the work or product (as rent, taxes, insurance, lighting, heating, accounting and other office expenses, and depreciation)." Overhead is simply the aggregate cost of doing business. By saying "such taxes shall constitute a part of the operating overhead," the legislature simply considers the B & O tax a cost of doing business. RCW 82.04.500.
¶ 7 Contravening the statute's plain meaning, Appleway added $79.23 in B & O tax after Appleway and Nelson negotiated a final price of $16,822.[5] No other overhead costs  such as rent, insurance, utilities  were itemized and charged above the $16,822. Appleway treated the B & O tax as a tax on customers. Clerk's Papers (CP) at 51 (contract stating the B & O taxes "have been assessed on the negotiated sales amount"). Appleway's practice is explicitly forbidden by the statute.[6]
*851 ¶ 8 Appleway's defense of this add-on practice misconstrues the Court of Appeals holding, mischaracterizes court decisions, and relies on unconstitutional out-of-state statutes and ambiguous Department of Revenue (DOR) notices. Appleway claims the Court of Appeals held Appleway could add on the tax as long as it did not disclose or itemize it to the customer. Pet. for Review at 1 ("[A]fter the court of appeals' decision, the Appleway dealerships remain free to pass through the B & O tax to consumers . . . but only so long as they bury the pass-through."). Appleway's reading is flawed. First, the Court of Appeals explicitly found the add-on was improper. Appleway, 129 Wash.App. at 945, 121 P.3d 95 ("[T]he plain language of the statute states that Appleway must treat the B & O tax as operating overhead and that the B & O tax cannot be treated as a tax on purchasers or customers."). Second, the Court of Appeals did not prohibit disclosure. Rather it said: "Quite simply, the seller can disclose the B & O overhead charge to the purchaser, but it must be done while setting the final purchase price. The process here involved the negotiation of a price; hence, the information should have been disclosed as part of that process." Id. Appleway may itemize the tax if it is part of the final purchase price. In other words, it is lawful for Appleway to disclose a B & O charge to Nelson during the course of negotiating a purchase price or later identify any claimed element of overhead. However, Appleway may not add a B & O charge as one of several fees and taxes after Appleway and Nelson negotiated and agreed upon a final purchase price.
¶ 9 None of Appleway's cited authority is apposite, and some cases support Nelson rather than Appleway. Appleway relies heavily on Public Utility District No. 3 of Mason County v. State, 71 Wash.2d 211, 427 P.2d 713 (1967). This case is not on point.[7] It concerns whether Mason County Public Utility District (PUD) needed to include taxes levied on utilities customers in its gross income. This court said those taxes must be included in gross income. Appleway's argument seems to be since the court did not disallow the pass-through of utilities taxes there, it should not be concerned with the pass-through of B & O taxes here. But, in a statute entitled "Municipal taxes  May be passed on," the legislature specifically allowed PUD to levy such taxes directly on the customers. See RCW 54.28.070 ("Any such district shall have the power to add the amount of such tax to the rates or charges it makes for electricity so sold within the limits of such city or town."). Here, the legislature has said the opposite. RCW 82.04.500.[8]
¶ 10 Appleway also relies on Texaco Refining & Marketing Co. v. Commissioner of Revenue Services, 202 Conn. 583, 522 A.2d 771 (1987). This case supports Nelson rather than Appleway. This is the only case Appleway cites concerning statutory language similar to RCW 82.04.500. See Conn. Gen.Stat. § 12-599(a) ("It is not the intention of the general assembly that the tax . . . be construed as a tax upon purchasers. . . ."). But the Second Circuit Court of Appeals ruled the Connecticut statute unconstitutional in 1981 because it was preempted by federal law regulating oil prices. See Mobil Oil Corp. v. Dubno, 639 F.2d 919 (2d Cir.1981). The Texaco Refining court specifically noted this was why Texaco was "able to pass through the tax to its purchasers." Texaco Ref. & Mktg. Co., 202 Conn. at 585 n. 5, 522 A.2d 771 (citing Mobil Oil Corp. v. Dubno, 492 F.Supp. 1004 (D.Conn.1980), aff'd in part, dismissed in part by Dubno, 639 F.2d 919). But for the Second Circuit's ruling, the *852 statute would have prevented Texaco from passing the tax on to its customers. Conversely, RCW 82.04.500 is still good law and therefore does prevent Appleway from passing the tax on to its customers.
B. The notice from DOR is ambiguous and does not deserve deference
¶ 11 Next Appleway relies on a notice from DOR, which Appleway says allows companies to pass the B & O tax on to its customers. This DOR notice is at worst ambiguous. In April 2002 DOR reissued a special notice that said, "It is not illegal for a seller to itemize the B & O tax. . . . The statute intends the B & O tax to be a part of the seller's overhead. However, it does not prevent a seller from itemizing and showing the effect of the tax." CP at 122 (Washington State Department of Revenue Special Notice, "What You Need to Know about Itemizing the B & O Tax," (reissued Apr. 2002)). The notice then quotes RCW 82.04.500. Appleway claims this means DOR allows businesses to pass the tax on to its customers after a final price has been set.[9] Or this could mean DOR is suggesting companies can inform customers part of the final price includes the B & O tax.[10] A second DOR notice supports this latter interpretation. In September 2004 DOR circulated a B & O tax fact sheet, which states: "The B & O tax is a cost of doing business and should not be billed to your customer as a separately stated item (as is the sales tax)." CP at 497.
¶ 12 Even though the DOR policy is at worst unclear, Appleway claims the Court of Appeals' decision contravenes the April 2002 notice. The response is threefold: First, the judiciary has ultimate authority to construe statutes; an administrative interpretation may be only given deference, it is never authoritative. Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wash.2d 621, 627-28, 869 P.2d 1034 (1994). Second, this Court will only give deference if the statute is ambiguous. Id. Here there is no ambiguity as the statute plainly forbids the tax on customers. See RCW 82.04.500. Third, an agency interpretation that conflicts with a statute is given no deference. Waste Mgmt., 123 Wash.2d at 628, 869 P.2d 1034. If the April 2002 notice does say businesses can pass through the tax after a final price has been set, then it is wrong and conflicts with the plain language of RCW 82.04.500. In any event, this DOR notice bears no weight on this court's decision.
C. RCW 82.04.500 does not violate the First Amendment to the United States Constitution
¶ 13 Appleway claims its First Amendment rights are violated because it misreads the Court of Appeals' holding to prevent disclosure and itemization. The statute is silent about disclosure, and Appleway is free to disclose and itemize any tax or cost. Appleway was free to inform Nelson that $79.23 of his final purchase price would be used to pay for the B & O tax. The First Amendment, however, will not insulate Appleway's illegal practice of making customers bear Appleway's tax burden.
¶ 14 A Minnesota case cited by Appleway is, again, inapposite. Bloom v. O'Brien, 841 F.Supp. 277 (D.Minn.1993). The Minnesota Legislature specifically allowed health care tax to be passed through to patients but forbade doctors from informing *853 patients about the tax. Id. at 279. The United States District Court for the District of Minnesota ruled this was unconstitutional. Id. But RCW 82.04.500 says nothing about disclosure. Appleway can disclose or itemize costs associated with the purchased item, but unlike a sales tax, it cannot add a B & O tax to the purchase price.

III.
¶ 15 Next we address whether Nelson can seek a declaratory judgment concerning his rights under RCW 82.04.500. The Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, grants Nelson the right to seek a declaratory judgment finding Appleway violated RCW 82.04.500.
A person . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.
RCW 7.24.020. See also State ex rel. Lyon v. Bd. of County Comm'rs, 31 Wash.2d 366, 196 P.2d 997 (1948) (holding a party may seek declaratory judgment to construe a statute). Furthermore, the legislature intended for the UDJA to be applied liberally. RCW 7.24.120 (stating the UDJA "is to be liberally construed and administered").
¶ 16 Appleway raises three challenges to Nelson's seeking a declaratory judgment. First, Appleway argues Nelson has no standing. Second, Appleway argues there is no judiciable controversy. And third, Appleway argues there is no private right of action, express or implied, in RCW 82.04.500.
A. Nelson has standing to seek a declaratory judgment
¶ 17 To have standing a party must (1) be within the zone of interest protected by statute and (2) suffered an injury in fact, economic or otherwise. Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wash.2d 791, 802, 83 P.3d 419 (2004). Appleway contends Nelson is a customer and not within the zone of interests protected by RCW 82.04.500 because it is a tax "on businesses." Suppl. Br. of Pet'rs at 13 (emphasis in original). Therefore, Appleway argues, a customer has no rights under the statute. Appleway is right  the B & O tax is meant to be a tax on businesses. But Nelson paid Appleway's tax for Appleway. This is precisely what RCW 82.04.500 forbids. Therefore, Nelson is within the zone of interest protected by the statute. Appleway also maintains there is no injury in fact because Nelson would have to pay the tax as part of the overhead expense. This is incorrect as the market sets the price, not the overhead. See discussion supra note 5. Nelson paid $79.23 more than the negotiated price. This is economic injury in fact and Nelson satisfies both standing requirements.
B. This case is a justiciable controversy
¶ 18 The elements of a justiciable controversy under the UDJA are: (1) parties must have existing and genuine rights or interests; (2) these rights or interests must be direct and substantial; (3) the determination will be a final judgment that extinguishes the dispute; (4) the proceeding must be genuinely adversarial in character. State ex rel. O'Connell v. Dubuque, 68 Wash.2d 553, 413 P.2d 972 (1966). All elements are easily satisfied. There are genuine rights and interests concerning who must pay Appleway's B & O tax. Both parties are adversarial, each aggressively seeking the other pays the tax.[11] And construing the statute will conclusively decide Appleway must pay the tax from its final purchase price.
C. Nelson's restitution claim is a private right of action that allows him to recover the $79.23 improperly paid as B & O tax
¶ 19 Finally, Appleway maintains Nelson failed to have a private right of action to *854 support his claim for relief. Of course, no additional private right of action is necessary for parties to seek a declaratory judgment whenever their rights are affected by a statute. RCW 7.24.020 ("A person . . . whose rights . . . are affected by a statute . . . may have determined any question of construction or validity."). Appleway argues, though, a private right of action is necessary for Nelson to recover the $79.23 paid as B & O tax.[12] But Nelson does not invoke the UDJA "to obtain monetary relief," as suggested by Appleway. Pet. for Review at 15. Rather, he brought a private right of action in his unjust enrichment claim.
¶ 20 The new Restatement (Third) of Restitution addresses the confusion surrounding unjust enrichment claims. While historically understood as an equity action, restitution has roots in both equity and the law. See RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 cmt. b (Discussion Draft 2000). The original justification, dating back to Lord Mansfield's decision in Moses v. Macferlan[13] has given way to a modern understanding, based on a transaction's legal validity. Specifically, any transaction not adequately supported by law is voidable. See RESTATEMENT (THIRD) OF RESTITUTION, supra, § 1 cmt. b at 3 ("Unjustified enrichment is enrichment that lacks an adequate legal basis: it results from a transfer that the law treats as ineffective to work a conclusive alteration in ownership rights."). Because Appleway illegally charged Nelson the B & O tax as an additional cost to the final purchase price, Appleway has been unjustly enriched with money properly belonging to Nelson. In effect, Appleway has made Nelson pay Appleway's taxes. Furthermore, restitution is more than a simple contract remedy. It is "itself a source of obligations, analogous in this respect to tort or contract." Id. § 1 cmt. h at 12-13.
¶ 21 We need not address whether RCW 82.04.500 implies a private right of action because Nelson brought an independent claim of restitution. Therefore, we hold the superior court properly allowed Nelson to seek a declaratory judgment.

IV
¶ 22 Finally, we address whether the superior court properly certified the class under CR 23(b)(2). CR 23 states:
(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:
. . . .
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;. . . .
¶ 23 We review class certification for abuse of discretion and will not disturb a trial court's certification decision if the record indicates the court properly considered all CR 23 criteria. Lacey Nursing Ctr. v. Dep't of Revenue, 128 Wash.2d 40, 47, 905 P.2d 338 (1995) ("`A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds.'") (quoting Eriks v. Denver, 118 Wash.2d 451, 467, 824 P.2d 1207 (1992)). An appellate court resolves close cases in favor of allowing or maintaining the class. Sitton v. State Farm Mut. Auto. Ins. Co., 116 Wash. App. 245, 250, 63 P.3d 198 (2003).
¶ 24 Appleway concedes the class meets the requirements of CR 23(a) and the explicit requirements of CR 23(b)(2) by acting in a way generally applicable to the class. But Appleway reminds this court any monetary relief must be incidental to the declaratory relief. In Sitton, the Court of Appeals *855 examined case law on CR 23's federal counterpart and found:
Classes certified under subsections (b)(1) and (b)(2) are "mandatory" classes; that is, the results are binding on all class members, who may not choose to opt out of the class. Notice to class members under these subsections is left to the trial court's discretion. Mandatory class members thus may be deprived of their rights to notice and an opportunity to control their own litigation. For these reasons, when plaintiffs are seeking monetary damages, certification under (b)(1) or (b)(2) violates due process unless the monetary damages sought are "merely incidental to the primary claim for injunctive or declaratory relief."
Sitton, 116 Wash.App. at 252, 63 P.3d 198 (footnotes omitted) (quoting Molski v. Gleich, 307 F.3d 1155, 1165 (9th Cir.2002)), withdrawn and reprinted as amended by 318 F.3d 937, 949 (9th Cir.2003). Incidental damages "`flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.'" Molski v. Gleich, 318 F.3d 937, 949 (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir.1998)). These damages must be cognizable by objective standards and not significantly dependent on each class member's subjective circumstances. Sitton, 116 Wash. App. at 252, 63 P.3d 198.
¶ 25 Nelson's claim for $79.23 flows directly from Appleway's liability. Furthermore, computing the monetary relief is simple and relies entirely on objective facts, without need for individual assessments of each class member's circumstances. The relief is simply the amount of B & O tax Appleway charged customers above the purchase price.[14] There is no threat of a due process violation because all damages can be objectively determined.
¶ 26 Appleway also relies on Eriks, 118 Wash.2d 451, 824 P.2d 1207, where we upheld a trial court's denial of class certification under CR 23(b)(2). There the plaintiffs moved to recertify under CR 23(b)(2) after the trial court granted partial summary judgment. Id. at 465-66, 824 P.2d 1207 (remaining issue concerned primarily disgorgement of attorney fees). This court found no abuse of discretion when the trial court refused to recertify. The court relied on a federal case, which said "subdivision (b)(2) by its own terms does not apply to actions only for damages." McDonnell Douglas Corp. v. United States Dist. Court, 523 F.2d 1083 1087 (9th Cir.1975) ("[T]he declaratory relief sought by plaintiffs adds nothing to their claim for damages."). See Eriks, 118 Wash.2d at 466-67, 824 P.2d 1207. The Eriks court said, "[w]here the declaration merely forms the basis for monetary relief, a CR 23(b)(2) action is not appropriate." Id. at 466, 824 P.2d 1207. Here the declaratory judgment is more than a basis for monetary relief; Nelson asks the court to declare his rights under the statute. Lastly, certification under CR 23(b)(2) is inappropriate if the claim relates "exclusively or predominantly" to monetary damages. 3A LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 23 advisory comm. notes at 560 (4th ed.1992). Appleway claims Nelson "seeks millions of dollars." Pet. for Review at 14. Seventy-nine dollars and twenty-three cents is not millions of dollars, and Nelson's claim for monetary relief does not dominate his claim for declaratory relief.

CONCLUSION
¶ 27 The superior court properly considered all CR 23 criteria, and its decision is not manifestly unreasonable. All requirements of CR 23(a) are met; Appleway's improper passthrough of the B & O tax applies to the entire class; and Nelson's damages are incidental to his declaratory relief and do not predominate the claim. The superior court properly certified the class.
¶ 28 We affirm the Court of Appeals.
WE CONCUR: GERRY L. ALEXANDER, C.J., TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, BOBBE J. BRIDGE, JJ.
*856 MADSEN, J. (dissenting).
¶ 29 For at least three reasons, the majority comes to the wrong result. First, it rests on an illogical premise. The majority reasons that if the parties' negotiations include an amount for the seller's business and occupation tax, it may be included in the price of the vehicle sold, but if the parties' negotiations do not include reference to the tax, then it may not be added to the sales price of the vehicle. But if RCW 82.04.500 does not permit a pass-through of the tax to the customer, it makes no difference at what point the tax is added to the selling price. Either way, the customer pays the amount that represents the seller's business and occupation tax attributable to the proceeds of the sale.
¶ 30 Second, the majority's reading of the statute is, in any case, contrary to the plain language of the statute. The statute does not say that a seller cannot include the amount representing its business and occupation tax liability in the price it charges the customer, whether itemized or not. Instead, it says, quite simply, that the burden of the tax is on the seller, i.e., the seller is the taxpayer responsible for the tax. It does not say that the seller cannot obtain the funds necessary to pay the tax by charging the customer. Quite the contrary. Overhead costs of doing business are routinely and necessarily passed on to customers. The statute expressly states that the tax is a part of overhead. Under RCW 82.04.500, there is no difference between an overhead expense such as rent or utilities, for which the seller is responsible, and the business and occupation tax, for which the seller is also responsible.
¶ 31 Third, the majority goes to extraordinary lengths to allow Mr. Herbert Nelson and the class he represents a day in court. The majority first rejects the notion that Nelson is seeking to enforce the statute, reasoning instead that all he asks is for an interpretation of the statute as it affects his rights. This conclusion is untenable. Mr. Nelson does not want the court to simply interpret the statute. He wants the court to enforce the statute as favorably interpreted. But he has no standing to enforce it, as he implicitly concedes. The majority then says that Nelson may seek damages because he has a cause of action for restitution. Even a casual reading of the complaint shows that Nelson did not assert a private right of action for restitution, contrary to the majority's representation. Instead, he asserted only claims under the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, and his request for restitution is not an independent cause of action but rather simply a request for additional relief, damages, under RCW 7.24.080.
¶ 32 Given the severity of the flaws in the majority's opinion, I must dissent.

Analysis
¶ 33 The first problem with the majority is, as noted, that ultimately it rests on inconsistent applications of RCW 82.04.500 that cannot be reconciled with any reasonable reading of the statute. Like the Court of Appeals, the majority holds that the statute prohibits adding the amount due from the seller on a sale of an automobile to the price of the vehicle after negotiations have otherwise concluded but permits including this amount in the sales price of the vehicle if the amount was disclosed during the course of the negotiations. If the statute prohibits passing on to the customer the amount that the seller is obligated to pay in business and occupation tax on the proceeds from the sale, then this amount cannot be charged to the customer and it makes no difference when it is added to the price of the vehicle. If the statute does not prohibit charging the customer the amount the seller must pay, again it makes no difference when the charge is added. Likewise, whether the amount is itemized separately makes no difference because itemization does not determine whether the customer is or is not paying that amount. And if itemizing is prohibited, the seller can simply bury the amount in the total charged.
¶ 34 This flaw in the majority becomes even more evident upon a closer look at the language and meaning of the statute in the context of the statutory framework governing payment of the business and occupation tax. The tax is a tax on gross proceeds of sales or gross income of the business, RCW 82.04.070, .080, depending on the circumstances, *857 RCW 82.04.220. For retailers, the tax is imposed on the gross proceeds of sales. RCW 82.04.250. "Gross proceeds of sales" are defined as the "value proceeding or accruing from the sale of tangible personal property and/or for services rendered," without any deductions for costs of the items or services, or other expenses, including "taxes, or any other expense whatsoever paid or accrued." RCW 82.04.070.
¶ 35 The statute at issue here, RCW 82.04.500, states two things. First, and most importantly, the statute says that the legislature does not intend that business and occupation taxes "be construed as taxes upon the purchasers or customers, but that such taxes are levied upon, and collectible from, the person engaging in the business activities" designated. RCW 82.04.500. RCW 82.04.500 thus explicitly places the legal obligation to pay the tax on the businesses identified in the tax statutes  in this case, a retail automobile dealership. This court has similarly observed, "[t]he burden of the business and occupation tax falls on the business itself." Commonwealth Title Ins. Co. v. City of Tacoma, 81 Wash.2d 391, 396, 502 P.2d 1024 (1972).
¶ 36 But this does not mean the business cannot include that amount in the price of the product sold. The plain meaning of a statute is determined from the ordinary meaning of the language in the statute, its context, related statutory provisions, and the relevant statutory scheme as a whole. State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005). In addition to identifying the business as the entity bearing the legal responsibility for paying the business and occupation tax, RCW 82.04.500 also says that the tax "shall constitute a part of the overhead" of the business. As explained, RCW 82.04.070 states that a business's expenses, unquestionably including overhead costs and expressly including taxes, cannot be deducted from the amount of a business's gross proceeds of sales on which the business and occupation tax must be paid. Necessarily, the statute therefore contemplates that gross proceeds of sales can include a business's taxes. That is, if the business is prohibited from deducting taxes from the gross proceeds of sales, taxes must be within the proceeds of sales in the first place or the question of deductibility would never arise.
¶ 37 By expressly identifying business and occupation tax as overhead, and by expressly including taxes within the class of business expenses that cannot be deducted from gross proceeds of sales, the legislature has consistently treated these taxes as business expenses virtually indistinguishable from any other part of overhead in relation to the price of items sold. It is elementary that a business will price the items it sells to recoup its expenses, including its overhead costs. Most tax paying businesses aim to make a profit, as the legislature undoubtedly knew when enacting the relevant statutes. Accordingly, just as it is obvious that a business will include overhead costs when pricing merchandise, it is obvious that it will also include the cost of its business and occupation tax when doing so  and that it can legally do so under RCW 82.04.500.
¶ 38 This being the case, what possible difference does it make that this item of overhead is itemized separately on the sales contract? Or that it is, or is not, specifically part of the negotiations between the seller and purchaser? Here, in fact, Mr. Nelson's testimony was that he knew he could still walk away once he knew the amount was added to the purchase price. More to the point, any customer has the option to decline to pay the price set by the seller, and that price will always include amounts to cover overhead costs.
¶ 39 In the end, the majority unfortunately overlooks the true significance of the statute: RCW 82.04.500 says the business is the legal obligor responsible for payment of the tax and the taxing statutes must not be construed to place that legal burden on the customer, and it says that the tax is to be considered part of overhead. The statute says nothing that precludes a business from passing on the cost of this part of its overhead just as any other part of overhead, and it says nothing precluding itemizing any overhead costs, including this tax, on an individual sales contract. The majority has turned a fairly simple statute into a complex and ultimately unworkable ban barring sellers *858 from passing on overhead costs to their customers unless they expressly negotiate this particular part of overhead as part of the price.
¶ 40 The third problem with the majority is its casual conversion of an attempt to obtain a declaratory judgment and damages under the UDJA into what is effectively an enforcement action Mr. Nelson is not entitled to bring. The majority permits use of the UDJA on the ground that it authorizes a person to bring an action seeking construction of a statute that "`affect[s]'" his or her "`rights.'" Majority at 854 (quoting RCW 7.24.020). What Mr. Nelson ultimately seeks, however, is a declaration that the statute means that it is illegal for the dealer to charge him and members of the class the amount representing what it must pay in business and occupation tax and that having illegally done so, the dealer was unjustly enriched and must return the money to Nelson and other class members. Stated more directly, Mr. Nelson wants the statute enforced to prevent his and class members' payment of what he says is the dealer's tax obligation and the return of the money he and other class members paid in contravention of the statute.
¶ 41 Such an "end run" should not be countenanced by the court. The majority's reasoning means that private enforcement actions will be permitted even if there is no statutory authority for such claims  provided they are disguised as declaratory judgment actions accompanied by claims for restitution.
¶ 42 To properly invoke the provisions of the UDJA Nelson invokes here, there must be some "right" that is "affected" by the statute. Mr. Nelson states that none of the "causes of action alleged in [his] complaint are pled as violations of the B & O [business and occupation] tax statute. . . . To the contrary, [he] asked the Superior Court to issue a declaratory judgment that [the dealer's] assessment and collection of B & O tax is `contrary to the laws of the State of Washington.'" Suppl. Br. of Resp't/Appellee Herbert Nelson at 14 (quoting Clerk's Papers (CP) at 9-10). Nelson identifies his "affected" "right" as the right not to pay business and occupation taxes illegally assessed by the dealer. Resp't Herbert Nelson's Answer to Pet. for Review at 12. This asserted "right" (assuming for the sake of argument it exists) arises because RCW 82.04.500, as Mr. Nelson reads the statute, prohibits a business from passing on to the customer the amount it must pay in business and occupation tax.
¶ 43 Despite his protests to the contrary, Mr. Nelson is seeking enforcement of the statute as though he has a private right of action to enforce it. Significantly, however, neither he nor the majority argues that he is entitled to bring an enforcement action based on alleged violations of the statute. But as is crystal clear, Nelson claims the statute has been violated, wants the court to declare the meaning of the statute to confirm that it has been violated, and wants what amounts to a "refund" of the "taxes" he claims he and others were illegally required to pay.
¶ 44 The majority also permits what it describes as a common law cause of action for restitution. Initially, while there are cases from other jurisdictions and secondary authority supporting the view that modernly some jurisdictions recognize an independent cause of action for restitution, and that it is not simply a remedy associated with tort or contract (or quasi-contract), the majority relies instead on a tentative draft provision (and commentary) in the Restatement (Third) of Restitution and Unjust Enrichment (Discussion Draft 2000). Majority at 854. While the court has turned to the American Law Institute's restatements of the law in several areas, I do not believe we should rely on tentative draft provisions as authority.
¶ 45 More importantly, however, the majority attributes a cause of action to Mr. Nelson that he did not bring. As mentioned, Nelson asserts a claim for damages under RCW 7.24.080. This provision in the UDJA states that "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper." However, nothing in the statute confers a cause of action. Instead, the statute codifies "the principle that every court has the inherent power to enforce its decrees and make such orders as may be necessary to render them effective." Ronken v. Bd. of County Comm'rs of *859 Snohomish County, 89 Wash.2d 304, 311-12, 572 P.2d 1 (1977). The statute allows further relief based on a declaratory judgment once it has been entered.
¶ 46 Here, Mr. Nelson stated in his complaint that he brought "this action for declaratory and injunctive relief and for monetary damages on his behalf and on behalf of all other similarly situated individuals and entities who were directly charged a B & O Tax on motor vehicles, parts, merchandise, or services they purchased from Defendants in Washington State." CP at 4. Nelson wants return of the "illegal tax" he claims he and other members of the class paid, based on a declaratory judgment that charging customers for the amount of the tax is illegal under RCW 82.04.080, i.e., "[d]isgorgement of all monies received by Defendants from their illegal collection of B & O Tax and B & O Sales Tax, and full restitution to Plaintiff and the Class." CP at 11. Factually, he asserted that "[a]s a result of Defendants' misconduct, Plaintiff and members of the Class have suffered incidental damages to the extent they have wrongfully paid B & O Tax and B & O Sales Tax." CP at 9. Under these circumstances, I do not agree that Mr. Nelson has asserted a separate common law restitution cause of action. Instead, he seeks restitution as an additional remedy.
¶ 47 In any event, whether he asserted an independent cause of action or not makes no difference because, as explained, he should not be permitted to camouflage an enforcement action under RCW 82.04.500 as a declaratory judgment action along with a request for restitution.
¶ 48 Finally, if customers are misled into thinking that a business and occupation tax is, like the sales tax, the legal obligation of the customer, and therefore must be paid by the customer, other recourse may be available. For example, RCW 46.70.180(1) makes it an unlawful act or practice "[t]o cause or permit to be advertised, printed, displayed, published, distributed, broadcasted, televised, or disseminated in any manner whatsoever, any statement or representation with regard to the sale, lease, or financing of a vehicle which is false, deceptive, or misleading." RCW 46.70.310 provides that "[a]ny violation of this chapter is deemed to affect the public interest and constitutes a violation of chapter 19.86 RCW," the Consumer Protection Act. Under appropriate circumstances, a Consumer Protection Act claim might be brought.
¶ 49 For the reasons stated, I dissent from the majority opinion.
WE CONCUR: CHARLES W. JOHNSON, JAMES M. JOHNSON, JJ.
NOTES
[1] Appleway Volkswagen is a car dealership within the Appleway Chevrolet, Inc., group of dealerships.
[2] In the same way as it charged a B & O tax, Appleway also charged $1,225.60 in sales tax, which included sales tax charged on the B & O tax.
[3] Nelson paid the B & O tax under protest. It was disclosed at four places in the contract, which stated: "Business and Occupation taxes (B & O tax) have been assessed on the negotiated sales amount." Clerk's Papers (CP) at 51. Additionally, Catherine Nelson initialed a line on the acknowledgement of terms and conditions form that read: "I understand that the dealership is passing through the B & O tax overhead and that I am paying sales tax on the sales price and the B & O tax amounts." CP at 53.
[4] The superior court defined the class as: "All individuals and entities from whom Defendants itemized and collected B & O Tax on the sale of motor vehicles, parts, merchandise, or service in the state of Washington." CP at 375.
[5] Appleway claims as a practical matter if Nelson does not pay the tax as an added on charge, then Appleway will simply increase its final price by the amount of the B & O tax. But Appleway cannot necessarily receive whatever price it sets; the market determines the fair market value, not the costs of doing business. In Phoenix v. Kolodziejski, the parties stipulated "`the amount of money paid as real property taxes is a cost of doing business of the [appellee's] landlord and as such has a material bearing on the cost of the [appellee's] rental payments.'" Phoenix v. Kolodziejski, 399 U.S. 204, 210 n. 6, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970) (alterations in original). But the Supreme Court disputed that characterization: "The extent to which a landlord can pass along an increase in property taxes to his tenants generally depends on how changes in rent levels in the municipality affect the amount of rental property demanded  the less responsive the demand for rental property to changes in rent levels, the larger the proportion of property taxes that will ultimately be borne by tenants. See C. Shoup, Public Finance 385-390 (1969); D. Netzer, Economics of the Property Tax 32-40 (1966); Simon, The Incidence of a Tax on Urban Real Property, in Readings in the Economics of Taxation 416 (published by the American Economic Assn.1959)." Id. So while Appleway can negotiate a purchase price with its customers, which may (or may not) include its B & O tax liability, the actual sale price will reflect what the used car market will bear. The $16,822 negotiated between Appleway and Nelson is presumably that market price; Appleway cannot then add its B & O tax liability on top of this final price.
[6] Appleway argues the Court of Appeals decision "finds no support in the law." Pet. for Review at 8. Apparently, Appleway believes a statute's plain meaning is insufficient support.
[7] In its petition for review, Appleway chastises the Court of Appeals for not discussing this case in its opinion. But the Court of Appeals likely ignored it because, like so much of Appleway's cited authority, it is irrelevant, dealing with entirely different tax issues.
[8] In other authority cited by Appleway there was no statutory language specifically outlawing the tax against customers. In Sprint Spectrum, L.P./Sprint PCS v. City of Seattle, 131 Wash.App. 339, 127 P.3d 755 (2006), the court held Sprint must include collected taxes in its gross income. Sprint was assessed a B & O tax and utility taxes by both the State and city of Seattle. It passed the municipal utility excise taxes, but not the B & O tax, on to the customer. There is no language in the law prohibiting a pass-through of utility taxes, like in RCW 82.04.500. See RCW 82.16.090 (describing how utility companies should pass-through the tax to customers); Seattle Municipal Code 5.48.020(B).
[9] An example in the notice might support this interpretation: "Two Seattle retailers selling the same products both make a $20,000 sale. One retailer doesn't itemize the B & O tax while the other does." CP at 123. The example then explains how to calculate the increased B & O charge. This is not necessarily apposite, however, since it is not clear whether the B & O tax was added before or after the buyer and seller agreed to a final price. The notice ends by saying: "The tax simply becomes one of the many overhead costs a prudent businessperson considers when pricing goods and services." Id.
[10] The attorney general's office has also expressed its concern over car dealerships' charging B & O tax. CP at 150. A memorandum from Douglas Walsh, Senior Counsel for the Attorney General, to Washington State Independent Automobile Dealers' Association says: "Our office is concerned that, in the context of a negotiated vehicle sales or lease transactions, separately charging the B & O tax is fraught with risk of unfairness and deception, which is highlighted by the legislature's clear expression of intent that the tax not be imposed directly on consumers, but instead be included as part of the overhead." CP at 151.
[11] Appleway argues Nelson should seek redress from the DOR. This is absurd. Nelson is not maintaining the State overcharged him B & O tax. Rather, Nelson is contending Appleway unlawfully shifted its tax to its consumers. This dispute is only between Nelson and Appleway and does not concern the DOR.
[12] This argument is dubious. RCW 7.24.080 allows further relief to be granted whenever necessary or proper. If a court found Appleway violated RCW 82.04.500 by charging the B & O tax as an additional cost, then it is arguably necessary to force Appleway to remit that payment to Nelson.
[13] Moses v. Macferlan, 2 Burr. 1005, 1012, 97 Eng. Rep. 676, 681 (K.B.1760) ("In one word, the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money.").
[14] This relief would also include a partial refund of the sales tax because Appleway charged sales tax on the B & O tax.