**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JARED A. PECK, individually and
on behalf of all the members of
the class of persons similarly
situated,

*Plaintiff-Appellant,*

v.

CINGULAR WIRELESS, LLC, a
Delaware limited liability company
doing business as Cingular
Wireless; NEW CINGULAR WIRELESS
SERVICES, INC., Delaware
corporation doing business as ATT
Wirless; NEW CINGULAR WIRELESS
SERVICES PURCHASING COMPANY LP,
a Delaware limited partnership
doing business as Cingular
Wireless, NEW CINGULAR WIRELESS
PCS LLC, a Delaware limited
liability company doing business
as Cingular Wireless,

*Defendants-Appellees.*

No. 06-36027

D.C. No.
CV-06-00343-TSZ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted
April 10, 2008—Seattle, Washington

Filed August 7, 2008

9991

Before: Carlos T. Bea and Milan D. Smith, Jr.,
Circuit Judges, and Joseph M. Hood,* Senior District Judge.

Opinion by Judge Hood

---

*The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

**COUNSEL**

David E. Breskin, Daniel F. Johnson, John B. Crosetto, Short Cressman & Burgess PLLC, Seattle, Washington, for the plaintiffs-appellants.

Scott A.W. Johnson, Kelly Twiss Noonan, Shelley M. Hall, Stokes Lawrence, P.S., Seattle, Washington, for the defendants-appellees.

Christine A. Mailloux, The Utility Reform Network, San Francisco, California; Patrick W. Pearlman, WV Public Service Commission, Charleston, West Virginia; for The

National Association of State Utility Consumer Advocates in Support of Plaintiffs-Appellants.

Michael Altschul, Senior Vice President, General Counsel, CTIA—The Wireless Association; Helgi C. Walker, William S. Consovoy, Wiley Rein LLP, Washington, DC; for CTIA—The Wireless Association as Amicus Curiae in Support of Defendants-Appellees.

## OPINION

HOOD, Senior District Judge:

Appellant Jared A. Peck ("Appellant") appeals the district court's grant of the motion to dismiss the complaint filed by Appellees Cingular Wireless, LLC and its subsidiaries (collectively, "Cingular" or "Appellees"). We have jurisdiction pursuant to 28 U.S.C. § 1291 and vacate and remand the decision of the district court.

## I. BACKGROUND

Appellant is a former employee of Cingular. During his tenure with Cingular, Appellant was provided with Cingular wireless service free of charge. Upon resigning his employment and prior to the filing of this lawsuit, Appellant purchased wireless service from Cingular. Appellant's invoice from Cingular included a 31-cent line item charge labeled "State B&O Surcharge" ("B&O Surcharge"). The Revised Code of Washington ("RCW") 82.04.220 imposes a business and occupation tax ("B&O Tax") on parties conducting business in the State of Washington. This tax is levied on the business itself:

> It is not the intention of this chapter that the taxes herein levied upon persons engaging in business be

> construed as taxes upon the purchasers or customers, but that such taxes be levied upon, and collectible from, the person engaging in the business activities herein designated and that such taxes shall constitute a part of the operating overhead of such persons.

RCW 82.04.500. It is clear from Appellant's Cingular invoice that Cingular chose to pass this charge on to consumers through a line item charge on consumers' invoices, a fact Cingular does not contest. The B&O Surcharge was not specifically disclosed in Appellant's contract with Cingular.

Appellant initiated this class action lawsuit against Appellees in Washington state court on February 14, 2006. Appellant asserted that Appellees violated RCW 82.04.500 by passing the B&O Tax on to consumers in the form of a line item charge, the B&O Surcharge.[1] Alleging that Cingular failed to disclose the B&O Surcharge to its customers prior to their decision to purchase Cingular's service, Appellant also brought claims for breach of contract, unjust enrichment, and violation of Washington's Consumer Protection Act ("CPA"). Appellant further sought a declaration that Cingular's B&O Surcharge violates RCW 82.04.500 and an injunction prohibiting Cingular from continuing to collect the B&O Surcharge.

After removing the case to federal court, Cingular moved

---

[1]The Washington Supreme Court has since considered the question of whether RCW 82.04.500 prohibits businesses from passing the B&O Tax on to consumers. *Nelson v. Appleway Chevrolet, Inc.*, 157 P.3d 847 (Wash. 2007) (en banc). In *Appleway Chevrolet*, Washington's highest court ruled that the B&O Tax could be passed on the consumers in the form of a line item charge, but only if disclosed and negotiated as an element of the final price. "[I]t is lawful for Appleway to disclose a B & O charge to Nelson *during* the course of negotiating a purchase price or later identify any claimed element of overhead. However, Appleway may not add a B & O charge as one of several fees and taxes *after* Appleway and Nelson negotiated and agreed upon a final purchase price." *Id.* at 851 (emphasis in original).

to dismiss the complaint based on the Federal Communications Act ("FCA"), 47 U.S.C. § 332(c)(3)(A), which prohibits state regulation of telecommunications carriers' rates, but expressly permits states to regulate carriers' "other terms and conditions of commercial mobile services." *Id.* The district court granted Cingular's motion to dismiss, holding that RCW 82.04.010 *et seq.*, was preempted by the FCA to the extent that the Washington statute attempted to regulate line item charges. The district court also dismissed Appellant's state law claims of breach of contract and violation of the CPA, holding the claims were preempted by the FCA.

In so holding, the district court deferred, under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), to the Federal Communication Commission's ("FCC") interpretation of § 332(c)(3)(A) in *Truth-in-Billing and Billing Format*, 20 F.C.C.R. 6448 (2005) ("*Second Report and Order*"). In the *Second Report and Order*, the FCC declared state laws that regulate line item billing for cellular wireless services were preempted by the FCA. *Id.* at 6449. The district court gave *Chevron* deference to the *Second Report and Order* notwithstanding the Eleventh Circuit's decision in *National Association of State Utility Consumer Advocates v. FCC*, 457 F.3d 1238, *modified on reh'g* 468 F.3d 1272 (11th Cir. 2006) ("*NASUCA*"), which vacated the *Second Report and Order*, holding that the FCC exceeded its authority and unreasonably interpreted the FCA by declaring that line item charges on carriers' bills constitute "rates" within the meaning of the FCA.

The district court denied Appellant's motion to reconsider and Appellant timely appealed.

## II.   STANDARD OF REVIEW

The Court of Appeals reviews *de novo* a district court's dismissal of a case on federal preemption grounds. *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 877 n.12 (9th Cir.

2006); *Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir. 2000). The Court of Appeals also reviews *de novo* a district court's interpretation of federal statutes. *Olympic Pipe Line Co.*, 437 F.3d at 877 n.12.

## III.   DISCUSSION

### A.   FCA Preempts State Regulation of "Rates"

**[1]** By revising the regulation of the wireless telephone industry through the 1993 amendments to the FCA, it was Congress's intent "to establish a national regulatory policy for [wireless telephone service], not a policy that is balkanized state-by-state." *In re Petition for the People of the State of California*, 10 F.C.C.R. 7486, 7499 (1995) (footnote omitted). Because "[s]tate regulation can be a barrier to the development of competition in [the wireless telephone service] market, uniform national policy is necessary and in the public interest." *Id.* at 7499 n.70 (quoting H.R. Rep. No. 103-213, at 480-81). To that end, the FCA provides, in pertinent part:

> [N]o State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services.

47 U.S.C. § 332(c)(3)(A). Accordingly, while a state may not regulate a wireless carrier's rates, it may regulate the "other terms and conditions" of wireless telephone service.

**[2]** As noted by the D.C. Circuit, "Section 332(c)(3)(A) leaves its key terms undefined. It never states what constitutes rate and entry regulation or what comprises other terms and conditions of wireless service." *Cellular Telecomms. Indus. Ass'n v. FCC*, 168 F.3d 1332, 1336 (D.C. Cir. 1999). When a statute is ambiguous or leaves key terms undefined, a court

must defer to the federal agency's interpretation of the statute, so long as such interpretation is reasonable. *Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc.*, 423 F.3d 1056, 1067 (9th Cir. 2005) (citing *Chevron*, 467 U.S. at 845). In its *Second Report and Order*, the FCC sought to clarify the term "rates," as used in § 332(c)(3)(A), by declaring that "rates" include line item charges. The FCC reasoned that § 332(c)(3)(A) prohibited states from regulating "rate structures" and "rate elements," which would include line items. 20 F.C.C.R. at 6462-67. Therefore, the FCC concluded state laws that regulate line item charges in wireless bills were preempted by the FCA.

**[3]** Pursuant to 28 U.S.C. § 2341 *et seq*. (the "Hobbs Act"), the National Association of State Utility Consumer Advocates properly petitioned the Eleventh Circuit Court of Appeals to set aside the FCC's *Second Report and Order*. *See* 28 U.S.C. § 2342(1) ("The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47."). Reasoning that the FCC's interpretation of rates to include line items was contrary to Congress's intent to permit state regulation of line items, the *NASUCA* court held that "[t]he language of section 332(c)(3)(A) unambiguously preserved the ability of the States to regulate the use of line items in cellular wireless bills," *NASUCA,* 457 F.3d at 1254, and that to hold otherwise "deprives the complementary phrase 'other terms and conditions' of all meaning." *Id*. at 1257. Consistent with these holdings, the Eleventh Circuit vacated the FCC's *Second Report and Order* to the extent that it interprets rates to include line items.

B.   *District Court's Failure to Defer to NASUCA*

**[4]** As this court held in *MCI Telecommunications Corp. v. U.S. West Communications*, 204 F.3d 1262 (9th Cir. 2000):

> When agency regulations are challenged in more than one court of appeals, 28 U.S.C. § 2112 requires that the panel on multidistrict litigation consolidate the petitions and assign them to a single circuit. The panel assigned the challenges to the FCC regulations to the Eighth Circuit, which thereby became, and remains, "**the sole forum for addressing . . . the validity of the FCC's rules**."

*Id.* at 1267 (quoting *GTE South Inc. v. Morrison*, 199 F.3d 733 (4th Cir. 1999) (emphasis added)).

**[5]** The FCC's *Second Report and Order* was challenged in both the Second and Eleventh Circuits. The Judicial Panel on Multidistrict Litigation consolidated challenges to the *Second Report and Order* in the Eleventh Circuit. Much like the Eighth Circuit's decision cited in *MCI Telecommunications*, the Eleventh Circuit's decision regarding the validity of the *Second Report and Order* is binding outside of the Eleventh Circuit. Such a result is consistent with this and other Circuits' application of the Hobbs Act. In *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 396-97 (9th Cir. 1996), this court discussed the statutory framework for determining the validity of an FCC order and determined that "together, [47 U.S.C. § 402(a) and 28 U.S.C. § 2342(1)] vest the courts of appeals with exclusive jurisdiction to review the validity of FCC rulings." *Id.* In discussing the exclusivity of its jurisdiction, the D.C. Circuit wrote: "[W]ith regard to final FCC actions, a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute." *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) (footnote omitted).

**[6]** The Hobbs Act provides a framework for determining the validity of final FCC orders, a framework that grants exclusive jurisdiction to the circuit courts. *See* 28 U.S.C. § 2341 *et seq.* While the district court may not have agreed with the Eleventh Circuit's analysis in *NASUCA*, according to

the framework for reviewing an FCC decision, the district court was bound by the *NASUCA* court's determination that the *Second Report and Order* was invalid. Accordingly, as a result of the vacatur of the *Second Report and Order,* there is no FCC ruling on the issue of whether "rates" include line item charges.

### C.    The FCA Does Not Preempt RCW 82.04.500

[7] In the absence of an agency interpretation of the statute, we examine section 332(c)(3)(A) as we would any other statute. We agree with the Eleventh Circuit's determination in *NASUCA* that section 332(c)(3)(A)'s use of the term "rates" does not comprehend how line items are displayed or presented on wireless consumers' bills. As the court noted in *NASUCA*, "[t]he prohibition or requirement of a line item affects the presentation of the charge on the user's bill, but it does not affect the amount that a user is charged for service." 457 F.3d at 1254. In this case, as the Washington Supreme Court noted in *Appleway Chevrolet*, RCW 82.04.500 does not purport to dictate how much businesses may charge for their goods or services. Cingular remains free to charge its customers as much, or as little, as the market will bear. 157 P.3d at 850 n.5.

[8] Rather, RCW 82.04.500, as interpreted in *Appleway Chevrolet*, simply structures the contract's negotiation and disclosure, mandating that businesses quote all prices inclusive of Washington's B&O Tax. Under RCW 82.04.500, businesses are allowed to itemize the B&O Tax and pass the B&O Tax to the consumer, so long as the tax is disclosed to the consumer "*during* the course of negotiating a purchase price." *Appleway Chevrolet*, 157 P.3d at 851 (emphasis in original). RCW 82.04.500 therefore acts as a consumer protection statute, regulating the method of disclosure, rather than the reasonableness or propriety of the underlying rate.[2] The

---

[2]Contrary to the claims of Cingular and *amicus curiae* CTIA—The Wireless Association, we are skeptical that requiring businesses to quote

legislative history of section 332(c)(3)(A) confirms that Congress did not intend the FCA to preclude the states from adopting measures like RCW 82.04.500, but rather considered them "other terms and conditions" that are expressly excluded from section 332(c)(3)(A)'s preemption of rates. *See* H.R. Rep. No. 103-111, at 261 (1993), *reprinted in* 1993 U.S.C.C.A.N. 378, 588 (explaining that " 'terms and conditions' . . . include such matters as *customer billing information* and practices and billing disputes and other *consumer protection matters*" (emphasis added)).

**[9]** We hold, therefore, that the FCA does not preempt state claims brought pursuant to RCW 82.04.500.

## IV.   CONCLUSION

Having concluded that there is no federal preemption of Appellant's state law claims, this court is of the opinion that the matter should be vacated and remanded to the district court for a determination of whether it has subject matter jurisdiction over Appellant's claims.

**VACATED AND REMANDED**.

---

prices on a tax-inclusive basis will necessarily mislead or conceal from consumers the effect of the state's tax on their rates. Cingular remains free to disclose, during negotiation or on customers' bills, how much of the purchase price is attributable to the B&O Tax. It simply "may not add a B & O charge as one of several fees and taxes *after* [it and its customers] negotiated and agreed upon a final purchase price." *Appleway Chevrolet*, 157 P.3d at 851.