275 P.3d 304 (2012)
174 Wn.2d 333
Certification from the United States Court of Appeals for the Ninth Circuit in Jared PECK, Plaintiff, and
James Bowden, a Washington resident, individually and on behalf of all the members of the class of persons similarly situated, Plaintiff-Appellant,
v.
AT & T MOBILITY, a Delaware limited liability company doing business as Cingular Wireless, aka Cingular Wireless, LLC; New Cingular Wireless Services, Inc., a Delaware corporation doing business as AT & T Wireless; New Cingular Wireless Services Purchasing Company LP, a Delaware limited partnership doing business as Cingular Wireless; New Cingular Wireless PCS LLC, a Delaware limited liability company doing business as Cingular Wireless, Defendants-Appellees.
No. 85581-1.
Supreme Court of Washington, En Banc.
Argued October 20, 2011.
Decided April 26, 2012.
David Elliot Breskin, Daniel Foster Johnson, Breskin Johnson & Townsend PLLC, Seattle, WA, for Plaintiff.
Scott A.W. Johnson, Shelley Marie Hall, Stokes Lawrence PS, Leonard J. Feldman, Maren Roxanne Norton, Stoel Rives LLP, Seattle, WA, for Defendants-Appellees.
Robert Lee Mahon III, Perkins Coie LLP, Seattle, WA, amicus counsel for Ctia-the Wireless Association.
C. JOHNSON, J.
¶ 1 This certified question from the Ninth Circuit Court of Appeals centers on whether under RCW 82.04.500, a seller may, upon disclosure, recoup its business and occupation (B & O) tax by collecting a surcharge to recover gross receipts taxes in addition to its monthly service fee. We hold that, regardless of disclosure, RCW 82.04.500 prevents a *305 business from recouping the B & O tax as an added charge to its sales price.

FACTS
¶ 2 James Bowden purchased three cellular telephones and a monthly cellular service plan for each telephone at a Cingular kiosk. As part of the purchase process, he signed a one-page Wireless Service Agreement (Agreement) for each plan. The Agreement included the cost for the monthly service fee and optional plan features such as text messaging. At the bottom of the Agreement was the following provision:
REGULATORY COST RECOVERY FEE Cingular also imposes the following charges: a Regulatory Cost Recovery Fee of up to $1.25 to help defray its costs incurred in complying with obligations and charges imposed by State and Federal telecom regulation, a gross receipts surcharge, and State and Federal Universal Service charges. The Regulatory Cost Recovery Fee is not a tax or a government required charge.
Appellant's Br., App. (emphasis added).
¶ 3 The Agreement also incorporated the "Terms of Service," which were outlined in a separate brochure that Bowden received at the time of purchase. The Terms of Service included that, in addition to the rate plan, Cingular's charges would include "applicable taxes and governmental fees, whether assessed directly upon you or upon Cingular." Appellee's Supplemental Excerpts of Record (ASER) at 68. Cingular's web site also had information about the gross receipts surcharge. ASER at 132-41.
¶ 4 Cingular's monthly service fee did not include Washington's B & O tax. The B & O tax, however, was listed as a "State B and O Surcharge" on Bowden's monthly bills, for which he was charged various amounts for each of the phones, ranging from $.05 to $.44 per month. 2 Appellant's Excerpts of Record (AER) at 137. During deposition, Cingular's senior tax manager testified that Cingular charged the B & O tax surcharge to its customers as a separate line item and that it was "very much like a transactional tax, which you would think that was a sales tax." 2 AER at 129. It is undisputed that Cingular properly disclosed the surcharge, and Bowden accepted the plan and the B & O tax surcharge without objecting to the inclusion of the surcharge or attempting to make adjustments to the terms or price of the plan.
¶ 5 This suit was originally filed in state court by Jared Peck who alleged similar facts and claims. Cingular removed the case to federal court. The federal district court dismissed Peck's claims, but the Ninth Circuit Court of Appeals reversed and remanded the case to state court. Bowden joined the suit and sought class certification. Peck took a voluntary dismissal. Cingular again removed the case to federal court and moved for summary judgment. The federal district court granted Cingular's motion. Bowden appealed the summary judgment order to the Ninth Circuit. Due to potential conflict with our decision in Nelson v. Appleway Chevrolet, Inc., 160 Wash.2d 173, 157 P.3d 847 (2007), and the Court of Appeals decision in Johnson v. Camp Automotive, Inc., 148 Wash.App. 181, 199 P.3d 491 (2009), the Ninth Circuit certified this question to us. Peck v. AT&T Mobility, 632 F.3d 1123 (9th Cir.2011).

CERTIFIED QUESTION
¶ 6 Under RCW 82.04.500, may a seller recoup its business and occupation taxes where, prior to the sale of a monthly service contract, the seller discloses that in addition to the monthly service fee, it collects a surcharge to cover gross receipts taxes?

ANALYSIS
¶ 7 Washington State charges the B & O tax on all business "for the act or privilege of engaging in business activities" in the state, which is measured against the value of products, gross proceeds of sales, or gross income of a business. RCW 82.04.220(1). The tax is levied directly on businesses as part of operating overhead:
It is not the intention of this chapter that the taxes herein levied upon persons engaging in business be construed as taxes upon the purchasers or customers, but that such taxes shall be levied upon, and collectible *306 from, the person engaging in the business activities herein designated and that such taxes shall constitute a part of the operating overhead of such persons.
RCW 82.04.500.
¶ 8 We addressed whether RCW 82.04.500 permits a business to pass the B & O tax through to its customers in Nelson, concluding that a seller was not permitted to pass the tax through as an added charge to the final purchase price. Due to the facts presented in Nelson, and the Court of Appeals' application of Nelson to its Johnson decision, the parties here disagree on whether the B & O tax may be passed through if disclosed. Cingular contends that under Nelson, the statute permits a seller to charge a B & O surcharge to its customers as long as the charge is disclosed to the customer prior to the sale of the service contract. The Ninth Circuit appears to also share a similar interpretation. See Peck v. Cingular Wireless, LLC, 535 F.3d 1053, 1058 (9th Cir.2008) (holding that RCW 82.04.500 is not preempted by federal law prohibiting state regulation of "rates" under the Federal Communications Act, 47 U.S.C. § 332(c)(3)(A), because the statute regulates disclosure). On the other hand, Bowden argues that under Nelson, the statute does not permit an added charge for the B & O tax regardless of disclosure. Because of these conflicting interpretations, we take a closer look at Nelson and Johnson, reconciling any potential conflict between the decisions and clarifying any confusion.
¶ 9 In Nelson, the superior court granted summary judgment in favor of the customers, concluding the seller's collection of the B & O tax from customers violated RCW 82.04.500. The Court of Appeals affirmed, and the seller petitioned for our review. There, the seller and purchaser negotiated a sales price for a car. The seller charged several fees and taxes in addition to the agreed sales price, including an added charge for the B & O tax. The seller disclosed it was passing the B & O tax through four times in the contract, though our opinion noted that the purchaser paid the tax under protest. The purchaser initialed a line acknowledging he understood that the B & O tax was being passed through as overhead and that he was paying the sales tax on the sales price and B & O tax amounts. In reaching our conclusion, we noted that like any overhead, such as rent, insurance, and other office expenses, RCW 82.04.500 permits businesses to pass the B & O tax through to its customers as overhead, but prevents businesses from directly imposing the tax on its customers. Like any overhead cost, we explained that the B & O tax, if passed through, must be factored into, that is, included in, the sales price. But in Nelson, the seller added the tax to the final price like it did a sales tax, which violated RCW 82.04.500. Therefore, we affirmed the Court of Appeals and held that the seller improperly charged the purchaser the B & O tax on top of the final price. Nelson, 160 Wash.2d at 178-82, 184-85, 157 P.3d 847.
¶ 10 Despite reaching the opposite conclusion, the Court of Appeals decision in Johnson is consistent with Nelson. In Johnson, the Court of Appeals concluded that the car seller properly passed the B & O tax through to its customer. There, during negotiations for a car, the B & O tax amount was disclosed on a "writeback" used to facilitate negotiations. The writeback also included a statement that the seller understood the "above figures have been negotiated." Johnson, 148 Wash.App. at 183, 199 P.3d 491 (emphasis omitted). The purchasers initialed the writeback and finalized the sale. During summary judgment, the seller submitted unopposed declarations establishing that the purchase price included a B & O tax that was disclosed and negotiated. Given this, the Court of Appeals held that Nelson was distinguishable because in Johnson, the purchaser negotiated with the seller about the B & O tax before reaching the agreed price. Johnson, 148 Wash.App. at 183-85, 199 P.3d 491. Implicit in the Court of Appeals' conclusion is that the B & O tax was factored into the sales price. Therefore, because in Johnson the B & O tax was included in, not added to, the sales price, Johnson is consistent with Nelson.
¶ 11 Cingular contends that under Nelson, so long as a B & O surcharge is disclosed before a transaction is finalized, the seller *307 can properly recoup its B & O taxes as an added-on charge under RCW 82.04.050. To support its argument, Cingular primarily points to our discussion in Nelson, where we state:
[I]t is lawful for [the seller] to disclose a B & O charge to Nelson during the course of negotiating a purchase price or later identify any claimed element of overhead. However, [the seller] may not add a B & O charge as one of several fees and taxes after [the seller] and Nelson negotiated and agreed upon a final purchase price.
Nelson, 160 Wash.2d at 181, 157 P.3d 847. Thus, Cingular argues that because it disclosed the B & O surcharge to Bowden prior to purchasein the Agreement, in the Terms of Service, and on its web siteunder Nelson, it properly passed the B & O tax through.
¶ 12 The above selection, however, cannot be read in isolation. When read in context, that portion of our Nelson decision shows disclosure was not central to our holding, but rather shows we were addressing the seller's claims about disclosure. The selection is found at the end of a paragraph in Nelson. In that paragraph, we began with the seller's claim that the Court of Appeals' decision meant a seller "could add on the tax as long as it did not disclose or itemize it to the customer," meaning, sellers "remain[ed] free to pass through the B & O tax to consumers... but only so long as they bury the pass-through." Nelson, 160 Wash.2d at 181, 157 P.3d 847 (boldface omitted) (second alteration in original). Then, in response, we explained that the Court of Appeals decision could not stand for that proposition because the court (1) explicitly found the add-on was improper and (2) did not prohibit disclosure. Rather, we noted the Court of Appeals stated that "`the seller can disclose the B & O overhead charge to the purchaser, but it must be done while setting the final purchase price. The process here involved the negotiation of a price; hence, the information should have been disclosed as part of that process.'" Nelson, 160 Wash.2d at 181, 157 P.3d 847 (quoting Nelson v. Appleway Chevrolet, Inc., 129 Wash.App. 927, 945, 121 P.3d 95 (2005) (emphasis added)). The above selection is found at this point in the paragraph. Explaining what the Court of Appeals meant, we clarified that it was lawful for the seller to disclose the B & O charge during negotiations, meaning that the price being negotiated included a B & O charge; it was also lawful for the seller to identify, after negotiations, that the purchase price included a B & O charge as an overhead cost. However, we explained the seller could not add the B & O charge on the agreed-to purchase price. Nelson, 160 Wash.2d at 181, 157 P.3d 847. Put simply, whether disclosed or not, the seller could properly pass the B & O tax through as an overhead line itemization, but not as an added charge.
¶ 13 Moreover, any confusion in that paragraph is clarified later in Nelson where we address the seller's argument that the Court of Appeals decision violated its First Amendment right to free speech. Responding to that argument, we expressly state that RCW 82.04.500 was silent about disclosure. As mentioned, we explained that a business is free to disclose to its customer that the sales price included the B & O tax, whether it was during the course of or even after negotiations. Nelson, 160 Wash.2d at 184, 157 P.3d 847. Therefore, putting Cingular's selection of Nelson into its proper context shows that neither disclosure nor the timing of disclosure was essential to our holding.
¶ 14 Rather, the crux of Nelson is that under RCW 82.04.500, a business cannot add on the B & O tax to the sales price. This makes sense given that the legislature specifically stated "It is not the intention ... that the taxes herein levied upon persons engaging in business be construed as taxes upon the purchasers or customers." RCW 82.04.500. Allowing the tax to be added on to a sales price would equate the B & O tax with the distinctly different sales tax, which are imposed on a purchaser but collected from the seller. If businesses were allowed to add the tax (here, the tax was described as a "surcharge") onto a sales price, consumers would effectively be taxed twice, making the B & O levy on businesses illusory and rendering RCW 82.04.500 meaningless.
¶ 15 When a business adds on fees to its sales price or in the fine print, it gives the *308 appearance that the added charges have nothing to do with the price of its product or service. The B & O tax, however, has everything to do with a business's products or services as it is a levy for operating a business in Washington. RCW 82.04.220. Moreover, RCW 82.04.500 provides that persons engaging in business must treat the tax as operating overhead costs. Operating costs include, for example, labor, office supplies, rent, and utilities. These are costs that businesses factor into or include in its sales price; it would be odd for a business, and likely not a wise business practice, to add on separate charges for each of those operating costs. Likewise, under RCW 82.04.500, the B & O tax is to be treated no differently. This is precisely why the tax must be factored in as overhead when a business is establishing its sales price and determining its profit margin. Although in the end businesses may charge the entire B & O tax amount to its customers as overhead, at least it will be reflected in a sales price that consumers can compare against competitors. But as we explained in Nelson, while a seller can increase its final price by the amount of the B & O tax, it cannot necessarily receive whatever price it sets because the market determines fair market value. Nelson, 160 Wash.2d at 180 n. 5, 157 P.3d 847.
¶ 16 Here, Cingular's monthly service fee, the sales price of its service contract, did not include the B & O surcharge. Rather, on the Agreement, the surcharge was listed separately under the "Regulatory Recovery Fee" provision and described as a gross receipts surcharge. Additionally, Cingular's billing statements listed the surcharge separately like it was a sales tax, and both the sales tax and the B & O surcharge were added on to the service fee. Indeed, Cingular's senior tax manager testified that the surcharge was "very much like a transactional tax, which you would think that was a sales tax." AER at 129. Under RCW 82.04.500, it is irrelevant that the surcharge was disclosed to Bowden prior to purchase, that the actual amount of the surcharge was not disclosed because it varied each month, or that Bowden did not object or make an attempt to adjust or negotiate the terms or price of the plan. Although in both Nelson and Johnson the seller disclosed the actual amount of the B & O tax unlike Cingular in this case, this factual difference is of no consequence. Like in Nelson where the tax was added to the sales price, here, Cingular's surcharge was also added on to its monthly service fee. This practice is not permitted under RCW 82.04.500.

CONCLUSION
¶ 17 We answer no. Under RCW 82.04.500, even if disclosed, a seller is prohibited from recouping its B & O taxes by collecting a surcharge in addition to its monthly service fee.
WE CONCUR: TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, DEBRA L. STEPHENS, and CHARLES K. WIGGINS, Justices and GERRY L. ALEXANDER, Justice Pro Tem.
MADSEN, C.J. (dissenting).
¶ 18 The majority has lost sight of what RCW 82.04.500 is about and what it is not. First, RCW 82.04.500 is a section of chapter 82.04 RCW, "Business and occupation tax." It is located in Title 82 RCW, which is entitled "Excise taxes." It is not found within chapter 19.86, "Unfair business practices-consumer protection." Second, the majority strays into issues that are not even mentioned in RCW 82.04.500, such as how a business must or should account for its overhead costs when passing them on to consumers as part of the price of products it sells, whether consumers can easily comparison shop, and the relationship between the business and occupation (B & O) tax and fair market value, among other things. The statute does not address any of these thingsit merely places the responsibility for paying B & O taxes on the business owner and then allows the business owner to pass that through to consumers as a cost of overhead.
¶ 19 The statute says two things: (1) the B & O tax is levied on and collectible from the business and (2) B & O taxes are part of the business's overhead. From these two mandates, two principles emerge: (1) because the tax is on the business, not on the buyer of *309 the goods and services sold, a business cannot impose the tax or collect the tax from the buyer, and (2) because the B & O tax is properly an overhead cost, it can be considered in setting price and can be passed on to the customer as a cost of overhead. From these two principles, one rule should result: All of the facts and circumstances should be considered in order to determine whether a business has impermissibly imposed the tax on or collected it from the buyer, rather than treating it as overhead cost that can be recovered from the buyer through pricing goods or services.
¶ 20 The sole question here is whether the business has shifted the tax itself to the customer.[1] The answer to the question is, in every case, a matter of what the evidence shows. The distinction between "adding on" and "including in" is neither an appropriate nor a reliable test; it is confusing and ultimately defies logicbecause either way the price of the goods and services can be exactly the same and either way part of the price could constitute permissible B & O cost overhead or an impermissibly imposed tax. But if all the evidence surrounding a sales transaction is considered, meaningful distinction can be made between instances where the tax correctly remains the obligation of the seller and instances where the seller effectively levies the tax on and collects it from the buyer.
¶ 21 Evidence on this question may be direct or circumstantial. Direct evidence exists if, for example, the seller specifically identifies the amount on a sales invoice as "B & O tax." There is little doubt that the seller intends that the buyer pay the tax or that the buyer is going to believe that this is a tax on goods for which he or she is responsible (or at least is going to be aware that this is what the seller represents). Then, when the buyer pays, the seller has effectively collected the tax from the buyer. Other direct evidence that the seller has collected the tax itself from the buyer might exist, such as entries under a particular bookkeeping system or as identified through other business records. There may be testimony from the buyer that the seller said the B & O tax was added or that the buyer must pay the B & O tax.
¶ 22 Evidence that reasonably indicates under the circumstances that the buyer was obligated to or did pay the B & O tax is also evidence that should be considered on the issue of whether the tax was invalidly collected from the buyer. A contract listing an amount for "B & O Charges" that is added on at the end of a transaction or is identified in fine print may be circumstantial evidence indicating the tax itself is being passed on to the customer to pay.
¶ 23 When a price is negotiated, as in Nelson v. Appleway Chevrolet, Inc., 160 Wash.2d 173, 157 P.3d 847 (2007) and Johnson v. Camp Automotive, Inc., 148 Wash. App. 181, 199 P.3d 491 (2009), the circumstances may strongly indicate the tax itself is being passed on to the buyer, as in Nelson when the price was negotiated but the B & O tax was added after the negotiations. Conversely, it may show that the tax is part of the overhead costs being included in the price, as in Johnson, where the B & O charges were addressed during the course of the negotiations.
¶ 24 But the price of most goods and services are not negotiated. As the court acknowledged in Nelson and the majority reiterates, there is no problem passing on the exact amount of the B & O tax as an overhead cost and this can be accomplished as a line item.
¶ 25 The seller is as entitled to include the cost of paying the B & O tax when pricing goods and services as in the case of any other cost of overhead when pricing goods and services. It may not be the ordinary practice to specifically allocate overhead costs to specific goods sold, but nothing in RCW 82.04.500 precludes a business from doing so. *310 Thus, evidence that the seller has included the exact amount of the B & O tax, alone, is not enough to show that a tax, rather than an overhead cost, has been included.
¶ 26 Evidence of disclosure and the nature and timing of what has been disclosed may be relevant. In this case, the Ninth Circuit Court of Appeals certified the question whether a seller can recoup B & O taxes where the seller discloses in advance that in addition to a monthly fee under a monthly service contract it will be collecting a surcharge to recover gross receipt taxes.
¶ 27 The majority believes that disclosure is not the relevant point of inquiry. However, evidence concerning what disclosure is made may be highly relevant on the issue of whether the B & O tax has itself been passed on to the customer for payment or whether it is part of the price to recoup this overhead cost. When a seller discloses to a buyer in advance that the final price will include an amount that will reimburse the seller for the "cost of B & O tax overhead," this will be relevant to the question whether the seller has permissibly passed on overhead costs. For example, the seller might say, "I am going to include an amount that will cover my overhead cost of paying state taxes when I total your amount due." This would be evidence that suggests an overhead cost, rather than a tax, though any other evidence should be considered as well. On the other hand, if the seller discloses that the final price will include "the B & O tax," this would be evidence that the tax is being charged to the buyer. Whatever relevant disclosures are made would be evidence that should be considered.
¶ 28 The timing of when the overhead charge is added to price or when disclosure is made is evidence that also may be relevant. If a charge is included in the total price as an item sits on the shelf, this will likely weigh more in favor of the conclusion that no impermissible transfer of the obligation to pay the B & O tax has been attempted. But even here there could be, hypothetically speaking, contradictory evidence if, for example, the price sticker said, "Price: $401.88 (includes $1.88 B & O tax)." By identifying the amount payable as a "tax," the seller would open the evidentiary gate to the claim that he was passing on to the customer the tax itself or lead to the buyer perceiving that he or she was obligated to pay the tax.
¶ 29 Also relevant to timing, any late disclosure or late inclusion of an amount to represent the cost of B & O tax overhead should be carefully considered, as late timing of either event may tend to show or reinforce evidence suggesting the tax itself is being charged to the buyer.
¶ 30 In short, the statute calls for a limited inquiry: whether the seller has lawfully included the amount the seller pays as B & O tax in the price of goods to be passed on to the buyer as an overhead cost or has unlawfully imposed the tax on the buyer. Ultimately, this inquiry is a matter of considering all the evidence, which may include evidence of whether, when, and what kind of disclosures have been made, how the amount has been described on a sales invoice or in a contract, any other communications, when and how the price has been adjusted to reflect the amount paid in B & O taxes, and any other relevant evidence.
¶ 31 I cannot anticipate or describe all of the evidence that may be relevant. However, I know what is not relevantwhether a customer can readily comparison shop or the fair market value of items sold. Indeed, the majority's holding and other considerations that are identified in the majority opinion do not reflect the statute's purpose or conform to its plain language.
¶ 32 First, the majority's holding does not conform to the plain language or the purpose of RCW 82.04.500. The majority holds that the statute prevents a business from recouping the B & O tax as "an added charge" to the price of goods or services. The majority distinguishes between the B & O tax charge being included in the price, which is permissible, and adding the charge to the price, which is not. This holding seems to miss the most important part of the statutory inquiry: whether the tax is included in or added to the price. In Nelson the court explained that the seller "can disclose or itemize costs associated with the purchased item, but unlike a sales tax, it cannot add a B & O tax to *311 the purchase price." Nelson, 160 Wash.2d at 185, 157 P.3d 847 (emphasis added). The critical point is that a B & O tax cannot be added.
¶ 33 Moreover, while RCW 82.04.500 contemplates that the cost of paying the tax may be reflected in price to recoup the overhead cost, it does not address the method by which the seller may recoup its overhead cost of paying B & O taxes. Rather, the statute's only message about the matter is what the seller cannot do: the seller cannot collect the tax itself from the buyer nor impose the tax on the buyer. This being the case, what is the actual difference between passing on the amount equal to the B & O taxes paid as a line item overhead charge, as the majority acknowledges is permissible, majority at 307,[2] but not as an added charge, which the majority says is not, majority at 305, 306, 307. Simply because an amount equal to the B & O tax is added at the end should not be dispositive of whether a seller is imposing the tax on or collecting the tax from the buyer or instead pricing to reflect overheadparticularly if there is other evidence tending to show the amount is charged as overhead, such as disclosure of this fact in advance.
¶ 34 Other considerations mentioned in the majority are not relevant. For example, what possible difference does it make to the statute's purpose whether a customer can readily comparison shop? See majority at 308. There is nothing in the statute that suggests this was a concern of the legislature when it provided that B & O taxes are levied on and collectible from the business but shall constitute overhead. RCW 82.04.500 is not a consumer protection statute.
¶ 35 Rather, its purpose is to assure that, at the end of the day, the tax is levied against and collected from the business owner. "The burden of the business and occupation tax falls on the business itself." Commonwealth Title Ins. Co. v. City of Tacoma, 81 Wash.2d 391, 396, 502 P.2d 1024 (1972). The statute allows a business to legally recoup the cost of B & O taxes as overhead, as is true of other costs of overhead. Doing so is not contrary to the statute, which says nothing about any notice or disclosure requirement, fairness of overall pricing, consumer protection, or the ability to comparison shop.
¶ 36 The majority also comments on the fair market value of items sold, in connection with its misguided comment about comparison shopping. Majority at 307-08. Again, the statute says nothing about the fair market value of an item, just as it says nothing about the ability to comparison shop.
¶ 37 Next, the majority says that it would likely be an unwise business practice to add separate charges to a sales price for each individual item of overhead and under RCW 82.04.500 the B & O tax is not to be treated differently. Therefore, the majority says that the tax must be factored in as overhead when the business is determining its price and its profit margin. Majority at 307. These observations go well beyond what the statute requires.
¶ 38 RCW 82.04.500 says nothing about how a businessperson must set prices for goods or services, how a business can or must determine overhead costs, or about the propriety, wisdom, or feasibility of separately including individual items of overhead costs in the price of an item. Moreover, these statements by the majority are at odds with the majority's own recognition that the seller can properly include the B & O charge as a line item. The court should not try to dictate how a business may or may not determine its overhead costs.
¶ 39 Rather, the court should focus on the core purpose of the statute that the seller, not the buyer, bears the obligation of paying the B & O tax. The evidence in any given case can be assessed by the trier of fact to determine whether there is compliance with the statute. The question is whether the amount is a cost of business, whether included in or added to the total price, or is instead *312 a tax, whether included in or added to the total price.
¶ 40 In summary, RCW 82.04.500 states:
It is not the intention of this chapter that the taxes herein levied upon persons engaging in business be construed as taxes upon the purchasers or customers, but that such taxes shall be levied upon, and collectible from, the person engaging in the business activities herein designated and that such taxes shall constitute a part of the operating overhead of such persons.
¶ 41 The statute only says two things. A B & O tax is a tax that is imposed "for the act or privilege of engaging in business activities." RCW 82.04.220(1). The first thing that RCW 82.04.500 does is to plainly say that B & O taxes are not to be construed as taxes on the consumers but "shall be levied upon, and collectible from" the businessperson. From this it is equally plain that the tax cannot be imposed on the customer and it cannot be "passed through" to the customer as a tax. A buyer has no liability to the State to pay the B & O tax and the Department of Revenue cannot pursue the buyer if the B & O tax is not paid. In this way, the B & O tax is distinct from the state sales tax, for which liability is on the buyer and not on the seller, who simply acts as the State's agent in collecting the sales tax.[3]
¶ 42 The second thing that RCW 82.04.500 says is that B & O taxes "shall constitute" part of the overhead of the businesspersons paying them. From this, it is obvious that the seller can include its cost in the price of goods to recoup this cost, just as the seller can recoup other overhead costs through its pricing.
¶ 43 Therefore, the true issue in this case is how a court and parties can determine whether the businessperson is collecting the tax from or imposing it on the buyer or whether, instead, the seller is legitimately pricing items to include an amount to cover this cost of overhead. That is all that required. In examining this issue, the court should keep in mind that there is no bar to the seller passing on its costs of paying the B & O tax as an overhead cost, just as a businessperson does with respect to real property or personal property taxes paid on business property, and nothing prohibits the seller from stating the B & O overhead costs as a line item.
¶ 44 Turning to this case in particular, there is considerable evidence that suggests that Cingular Wireless was transferring its own B & O tax liability to its customers. For example, there was testimony from a Cingular senior tax manager that a B & O tax surcharge was charged to its customers "very much like a transactional tax, which you would think that was a sales tax, et cetera." 2 ER at 129.[4] The Terms of Service that are part of the 2004 Contract state in part that "[c]harges include ... applicable taxes and governmental fees, whether assessed directly upon you or upon Cingular." SER at 97 (emphasis added).[5] Each month, an additional charge was imposed based on the charges for the month's services. Thus, Cingular billed its customers for a "`B & O surcharge'" in addition to prices set in the contracts between the parties, that was described by its tax manager as a tax charge on the monthly recurring charge (at, for example, $39.95 per month) that would be charged in "the same way you would be charged sales tax, federal excise tax at the time or any other taxes." 2 ER at 107.
¶ 45 Other evidence may also suggest the charge to the customers was the B & O tax itself, rather than a means to recoup overhead costs. During this litigation Cingular took the position that imposition of the B & O surcharges was not assailable under state law because a provision of the Federal Communications Act prohibited state regulation of telecommunications carriers' rates. See Peck v. Cingular Wireless, LLC, 535 F.3d *313 1053, 1055 (9th Cir.2008); 2 ER at 127 (Cingular's tax manager testified that "Cingular has charged the B & O surcharge to customers as a separate line item because we're allowed to"; "we're allowed to do that under federal preemption"). If there is evidence showing that Cingular believed at the time it entered the relevant contracts that it could lawfully pass the B & O tax itself through to its customers and deliberately wrote its contracts to reflect this position, this would be relevant evidence on the issue of whether Cingular passed the tax itself on to its customers.
¶ 46 It is not the province of this court, however, to make the factual determination. Doing so is the province of the federal courts. We review certified questions from federal court as questions of law. In re F5 Networks, Inc., 166 Wash.2d 229, 236, 207 P.3d 433 (2009). Our jurisdiction is limited to the question certified. Broad v. Mannesmann Anlagenbau, A. G., 141 Wash.2d 670, 676, 10 P.3d 371 (2000). Applying the legal principles announced by this court when answering a certified question from a federal court is a matter for that federal court, which retains jurisdiction over all matters except the local question that is certified. Bradburn v. N. Cent. Reg'l Library Dist., 168 Wash.2d 789, 817, 231 P.3d 166 (2010).
¶ 47 Second, the parties have focused on the issue whether and to what extent disclosure in advance of the charges being imposed will satisfy RCW 82.04.500. Indeed, Cingular urges in its brief "that businesses can pass the B & O tax to consumers `so long as the tax is disclosed to the consumer during the course of negotiating a purchase price.'" Appellees' Opening Br. on Certification from the Ninth Circuit Ct. of Appeals at 12 (quoting NVER Enters., Inc. v. Newmar Corp., No. C08-5577 FDB, 2009 WL 3832752, at *3, 2009 U.S. Dist. LEXIS 106759, at 7 (W.D.Wash. Nov. 16, 2009) (unpublished)). But deciding whether the tax itself is disclosed or not is certainly not the issue, as the tax itself cannot be assessed against the buyer whether disclosed or not. (Moreover, when deciding whether the B & O tax itself is being imposed on or collected from the buyer, disclosure is only one among a myriad of possible evidentiary considerations.)
¶ 48 As should be apparent from the discussion above, I believe it is appropriate to reformulate the certified question to focus more closely on the meaning and scope of RCW 82.04.500, i.e., whether the B & O tax has been improperly imposed on or collected from the buyer rather than having been levied on and collectible from the seller, and in this context disclosure of the charge may be a relevant consideration.
¶ 49 The Ninth Circuit Court of Appeals should be advised that RCW 82.04.500 prohibits levying the B & O tax on or collecting the B & O tax from the buyer and instead mandates that the cost of paying the B & O tax is levied on and is collectible for the seller. The seller may set prices to account for the overhead cost of paying the B & O tax. The statute mandates no particular method of determining overhead or how overhead can be made part of the price of items sold. Since the court held in Nelson that an item may be priced with the specific cost of B & O tax in mind for that item, there is no bar to pricing a particular item to include the exact cost of the B & O tax payable on that item. Disclosure may be relevant evidence on the question whether the business has properly charged the customer for cost of overhead or has improperly imposed the tax on and collected it from the customer.
¶ 50 With this legal interpretation of the statute, the parties would then need to present all of their relevant evidence in federal court together with their arguments specifically geared to the actual issue under the statute. As noted, at this stage Cingular, at least, seems to misapprehend the legal import of the statute.

Conclusion
¶ 51 I would tell the federal court that the statute's purpose is to assure that the B & O tax is paid by the business and not the buyer, that the B & O taxes paid by the business are properly its overhead costs, and that all of the facts and circumstances must be considered to determine whether a seller has properly priced its goods and services to *314 include the overhead cost of paying the B & O tax rather than imposing the tax on the buyer. The content and timing of any disclosures about the price may be relevant evidence that should be considered.
¶ 52 So long as the evidence shows that a seller in Cingular's position properly charges its customers for its B & O tax overhead cost and does not impose the B & O tax itself on the customer, it may disclose its intent to do so in advance and charge for the overhead when it bills for the month's services. Alternatively, the seller can include the amount in each month's charges without disclosing in advance its intent to do so, provided again that it properly does so as an overhead cost and does not impose the B & O tax itself on the buyer.
¶ 53 I dissent from the majority opinion.
NOTES
[1] I doubt that the legislature intended that RCW 82.04.500 be enforced except by the Department of Revenue in a collection action against the business owner. See Nelson v. Appleway Chevrolet, Inc., 160 Wash.2d 173, 191, 157 P.3d 847 (2007) (Madsen, J., dissenting). If a business owner engaged in a deceptive act in order to recoup its B & O tax as a cost of doing business, the complaint would fall under the Consumer Protection Act, RCW 19.86.010 et seq. Such a claim is not present in this case.
[2] Nelson states that the seller "can ... itemize costs associated with the purchased item." Nelson, 160 Wash.2d at 185, 157 P.3d 847.
[3] See RCW 82.08.050; Kaeser v. City of Everett, 47 Wash.2d 666, 667, 289 P.2d 343 (1955); Morrow v. Henneford, 182 Wash. 625, 632, 47 P.2d 1016 (1935). Unlike in the case of the B & O tax, the department is authorized to proceed against the buyer if the buyer does not pay the sales tax. RCW 82.08.050(10).
[4] "ER" refers to the appellants' Excerpts of Record.
[5] "SER" refers to the Supplemental Excerpts of Record.